IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARTIN J. WALSH, <br> SECRETARY OF LABOR, <br> U.S. DEPARTMENT OF LABOR, <br> <br> Plaintiff, <br> <br> v. <br> <br> PACKERS SANITATION SERVICES, <br> INC., LTD. <br> <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | CIVIL ACTION FILE <br> NO. 4:22-cv-3246 |

<u>DECLARATION OF MATTHEW LATUFF</u>

I, Matthew Latuff, declare under penalty of perjury, as prescribed in 28 U.S.C. § 1746, that the following is true and correct:

1. I am an investigator for the United States Department of Labor, Wage and Hour Division's Minneapolis District Office. I am the investigator assigned to investigate the Defendant's compliance with the child labor provisions of the Fair Labor Standards Act ("FLSA").

2. I have been an investigator with the Wage and Hour Division in the Minneapolis District Office since September 2016. I am responsible for conducting investigations of employers under various laws that the Wage and Hour Division is charged with enforcing, including the FLSA. I have been assigned to approximately two hundred (200) cases over the last six (6) years and served as the lead investigator on as many as seventy-five (75) of those cases. Over fifty (50) of those two hundred assigned cases included a focus on child labor. The child labor cases included minors being

**EXHIBIT 3**

employed in violation of the Hours and Times standards, 29 C.F.R. § 570.35(a) and Hazardous Occupation Standards, 29 C.F.R. §§ 570.33, 570.51-570.68.

3. The statements made herein are based on my training and experience, my personal knowledge, observations made in the field, including during the execution of the warrant involving Defendant (as discussed below), as well as conversations with representatives and employees of the Defendant in this matter.

**The Defendant**

4. Packers Sanitation Services, Inc., Ltd., which may also operate as or do business as Packers Sanitation Services, LLC, ("PSSI") is a cleaning and sanitation company that provides contract work at meat processing facilities. The PSSI location at 1016 Oxford St., Worthington, Minnesota 56187, is a workplace where it is believed that PSSI currently recruits and signs up employees to work for PSSI at a meat processing facility located at 1700 Highway 60 N.E. in Worthington. The meat processing facility is owned and/or operated by JBS USA or one of its affiliates ("JBS").

5. PSSI also operates at a Turkey Valley Farms facility located at 112 S. 6th Street in Marshall, Minnesota 56258, where turkeys are slaughtered and processed.

**The Investigative Findings**

6. Prior to opening this investigation, Wage and Hour received a referral about possible child labor violations by PSSI in Grand Island, Nebraska from another law enforcement agency.

7. On August 24, 2022, the Wage and Hour Division initiated an investigation of PSSI to determine whether its practices complied with the FLSA, including its child labor provisions. I have been assigned as the lead investigator for the

PSSI location at 1016 Oxford St. in Worthington, Minnesota. I have been responsible for serving the warrant, initiating the coordination of employee interviews, touring the JBS plant located at 1700 Highway 60 N.E. in Worthington, MN, conducting the initial conference with the employer, conducting interviews and reviewing all provided records, documents, and information related to PSSI workers at those locations in Worthington, MN.

8. From October 3, 2022 to October 4, 2022, I conducted surveillance at the JBS plant located at 1700 Highway 60 N.E. Between the hours of 11:00 p.m. and 1:00 a.m., I observed approximately sixty (60) workers enter the facility. Many of the workers appeared to be both young males and females whom I estimated to be under the age of 18.

9. From October 12, 2022 to October 13, 2022, I again conducted surveillance at the JBS plant. Between the hours of 11:15 p.m. and 12:30 a.m., I observed approximately eighty (80) workers enter the facility. Many of the workers appeared to be young males and females whom I estimated to be under the age of 18. This surveillance assignment preceded the serving of the warrant.

10. On October 3, 2022, Assistant District Director ("ADD") Jill Azocar, Wage and Hour Investigator ("WHI") Lucia Mejia, and I visited the School District at 1211 Clary St. in Worthington, MN and served a subpoena to the High School Principal and Superintendent. On October 4, 2022, we interviewed school staff and received records within the scope of the subpoena.

11. Wage and Hour obtained warrants from U.S. Magistrate Judge Elizabeth Cowan Wright, in the District of Minnesota, authorizing Wage and Hour to inspect and

3

enter PSSI's storefront facility at 1016 Oxford St., Worthington, MN 56187, and the JBS facility at 1700 Highway 60 N.E., Worthington, MN 56187, authorizing Wage and Hour "to inspect the production facility of JBS Live Pork, LLC ("JBS") and, relatedly, Packers Sanitation Services, Inc. Ltd. ("PSSI") under section 11(a) of the FLSA, including but not limited to transcribing or copying all relevant records and data in whatever form maintained including paper or electronic for the previous three-year period, and privately questioning any workers or employees on the premises during working hours, regarding alleged violations of Sections 6, 7, 11, 12, and 15(a) of the Act, 29 U.S.C. §§ 206, 207, 211, 212, 215(a)."

**Execution of the Warrant(s)**

11. On October 13, 2022, Wage and Hour executed a warrant at the JBS meat processing facility (at 1700 Highway 60 N.E.) during the workers' shift. I arrived at the JBS facility at 2:00 a.m. Six (6) investigators accompanied me for the inspection, as discussed below. We produced a copy of the warrant to JBS Security Officer and were permitted entry into the JBS facility.

12. On October 13, 2022, at 8:00 a.m., Wage and Hour executed the warrant at the PSSI storefront (at 1016 Oxford St.). ADD Azocar, Regional Enforcement ("REC") Coordinator Amanda Christopoulos, and I were present when the warrant was served. We produced a copy of the warrant to the PSSI Office Manager Sanjuanita Briones upon entry into the PSSI establishment.

**Observations at the PSSI Storefront and Business Office**

13. At the PSSI storefront, I was responsible for serving the search warrant to the Office Manager. The contents of the search warrant, specifically items being

4

sought, and the preservation of evidence was discussed. I also assisted with identifying records to be copied and talked with the PSSI Recruiter, Celina Quijano. Ms. Quijano explained that the hiring process includes applicants completing an online application and providing various types of hiring documents. Ms. Quijano identified that PSSI uses the Talent Reef application for the hiring process and the Asure program for payroll. Ms. Quijano also stated PSSI's policy is that applicants must be 18 years of age to be hired.

14. ADD Azocar and REC Christopoulos were responsible for searching, identifying, and copying all pertinent documents and records within scope of search warrant at PSSI's storefront location.

**Observations at the JBS Facility**

15. PSSI In-House Safety Specialist Yarik Morales Vargas gave us access to files located in the PSSI office located at the JBS facility. The files included hard copy files of various types and a cell phone that included text messages between the employer and an employee discussing what age they wanted on their work record. WHI Jovanny Sanchez, WHI Lisa Juarez-Sandifer, and ADD Azocar assisted with copying files.

16. PSSI In-House Safety Specialist Morales Vargas gave us access to the PSSI laptop, which provided rosters of current workers and their respective supervisors and departments. I took photos of the rosters from the laptop's computer screen. REC Christopoulos downloaded all accessible files.

17. REC Christopoulos was tasked with searching for and copying information sought by the warrant at both the JBS plant, as well as at the PSSI storefront location. REC Christopoulos also conducted brief surveillance of the PSSI storefront (during execution of warrant at processing plant) in order to identify whether the employer

5

would attempt to interfere with collection of records and/or information.

18. WHI Juarez-Sandifer was tasked with conducting interviews of PSSI workers at the JBS plant, as well as assist with copying all identified relevant records and documents. ADD Jill Azocar was tasked with coordinating interviews, as well as interviewing workers herself. ADD Azocar also assisted with identifying and copying records maintained in the PSSI offices (located at JBS facility and storefront).

19. REC Raul Esparza was tasked with touring the establishment, taking pictures, and coordinating with the team's interviewers.

20. During the tour of the facility, REC Esparza and I observed many PSSI workers spraying with the hose and scrubbing multiple machines and a variety of equipment in multiple processing departments.

21. PSSI workers wore raincoats, waterproof overalls or pants, goggles, gloves, ear plugs, and hard hats.  They also had JBS badges with their names and photos on them.

22. I reviewed the "PSSI Department List" provided by JBS. The departments listed included Kill, Belly/Picnic, Casing, Cut, Ham, Head, New Loin, Old Loin, and Trim. Multiple different types of chemicals were used for cleaning purposes. The manually operated equipment included pig neck breakers and bone/split saws. The workers wore yellow water-proof jackets and pants, as well as rubber gloves, boots, and goggles. Pictures were taken, while the JBS Product Manager provided descriptions of the departments and equipment used.

23. WHI Sanchez was tasked with conducting interviews of PSSI workers who were onsite, as well as assisting with record-gathering. WHI Sanchez also performed

a tour of the facility. During his tour, he discovered approximately 10 younger-looking males located in the locker room during their work shift. Upon his discovery, WHI Sanchez and I questioned the workers and briefly educated them on the FLSA. We also requested to review any identification (ID) that they had on their person. Many claimed that they had no ID, while others provided their facility IDs, employment authorization, as well as their school IDs. Two young males confirmed they were currently in school and disclosed that after their shift ended, they would go to school. Aside from the information detailed below, the young workers in the locker room were hesitant to further engage with the Wage and Hour Investigators and declined to disclose information such as names of other workers with whom they attend school.

24. During the tour of locker room, we observed that PSSI workers clock in and out on a machine that takes a picture of their face (located outside of locker room) when entering their employee number.

**Interviews with Minor Children**

25. ADD Azocar and WHI Mejia interviewed two confirmed minor children working at the JBS facility during the PSSI Sanitation shift (12:00 a.m. to 7:00 a.m.) on October 13, 2022.

26. All interviews were conducted in the break room(s) of the facility in Spanish with Spanish-speaking investigators, as the minor children interviewed spoke Spanish.

27. As part of my job as the team lead, I reviewed the employee interviews conducted by the Wage and Hour Investigators at the Worthington, MN facility.

28. In an interview with ADD Azocar, Minor Child Q admitted to using two

names, one for work and one legal name, and gave their age as sixteen (16). Minor Child Q also disclosed that they attend the local high school, as did many of their fellow PSSI workers. Minor Child Q claimed they had only worked for PSSI at the JBS facility for six (6) months. As detailed below, documentation indicated that Minor Child Q had actually been employed by PSSI for twelve months, at which time, they were 15 years-old.

29.     In an interview with WHI Mejia, Minor Child P disclosed that they attended the high school as a ninth grader, as well as provided a birth date, which would make them eighteen (18) year old. However, as detailed below, documentation indicated Minor Child P was actually 17-years-old.

30.     WHI Mejia also conducted an interview with Minor Child EE. That interview disclosed their work name, date of birth, and work department. As detailed below, documentation indicated Minor Child EE was 17-years-old when hired.

**Additional Information**

31.     On the morning of October 13, 2022, at approximately 9:00 a.m., ADD Azocar, WHI Mejia, and REC Esparza followed-up with our subpoena requests with Worthington High School. It was at that time that Minor Child P, who initially claimed to be 18 years of age, was identified as being 17-years-old, and Minor Child Q was also confirmed as being a 16-year-old student. The school provided documents reflecting Minor Child P and Q's photo, legal name, and date of birth.

32.     On October 18, 2022, I received additional records, provided by PSSI (corporate office), to include employee contact information with social security numbers and the clock in and out records with corresponding photos. Using that information, along

8

with the minors' interviews and student profiles (provided by the school), it was verified that Minor Child Q had been employed by PSSI (to work at the Worthington, MN, JBS processing plant) since November 2021; at that time, they would have been 15-years-old.

33. Minor Child R's school picture was provided by the Worthington High School. By cross-referencing Minor Child R's home address, which was provided in the school profile, with the employee roster provided by PSSI, I was able to identify one PSSI worker residing at that address. I then searched the clock-in records, which included pictures of the employee, and could identify that the employee at issue and Minor Child R were the same person, using a different name. Clock-in records show that Minor Child R was employed by PSSI at the age of 17-years-old.

34. Minor Child EE was also identified as a minor by cross-referencing Minor Child EE's work name, which was provided in their interview statement, and the clock-in records provided by the employer. Using their date of birth, which was also identified in their interview statement, and clock-in records, which also included Minor Child EE's photograph, it was determined that Minor Child EE was employed by PSSI at the age of 17-years-old.

35. An interview with Minor Child Q, as well as records provided by employer, disclosed that they were employed to sanitize the Multivac equipment located in the Ham department, which includes JBT's MEPSCO UltraCAT Injector, which injects water into the product, and a "combo dumper" that could lift up to 3,000 pounds of meat.

36. An interview with Minor Child P disclosed that they were employed to sanitize the equipment on the Kill Floor. Records provided by JBS showed the machines

and equipment located on Kill Floor, which included multiple back saws, brisket saws, and a lard grinder.

37. A review of records provided by JBS and PSSI identified Minor Child R being employed to sanitize the equipment located in the Trim Department. The equipment located in the Trim Department included the hind foot saw, band saw, and split rib saw.

38. An interview with Minor Child EE disclosed their date of birth and work name. Records provided by JBS and PSSI show that Minor Child EE was 17-years-old when hired. The records also disclosed that Minor Child EE was employed to sanitize the New Loin Department. The equipment located in the New Loin Department included the west sirloin saw, west loin bone grinder, west loin smoking saw, and band saw.

Executed on this  7th  day of November , 2022.

_____
MATTHEW LATUFF, Wage & Hour Investigator

*Digitally signed by MATTHEW LATUFF. Date: 2022.11.07 14:30:54 -06'00'*

10