IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MARTIN J. WALSH, Secretary of
Labor, U.S. Department of Labor,

Plaintiff,

vs.

PACKERS SANITATION SERVICES,
INC., LTD.,

Defendant.

4:22-CV-3246

TEMPORARY
RESTRAINING
ORDER

This matter is before the Court on the Secretary of Labor's motion for a temporary restraining order and preliminary injunction (filing 2) relating to the use of child labor by the defendant, Packers Sanitation Services. The Court will grant the request for a temporary restraining order and set this matter for a hearing on the propriety of a preliminary injunction.

BACKGROUND

Packers Sanitation contracts with meat processing facilities to provide cleaning and sanitation services. Filing 3-1 at 2. In particular, Packers Sanitation serves meat processing facilities operated by JBS Foods in Grand Island, Nebraska and Worthington, Minnesota. Filing 3-1 at 2; filing 3-3 at 2. Packers Sanitation also provides cleaning services to Turkey Valley Farms in Marshall, Minnesota. Filing 3-3 at 2.

The evidence produced by the Secretary's investigation into Packers Sanitation is set forth in the record and need not be repeated in detail—it suffices to summarize what that evidence suggests. Generally described, the Department of Labor's investigators obtained school records from Grand

Island and Worthington, and visited schools in Grand Island, Worthington, and Marshall. Filing 3-1 at 3; filing 3-3 at 3; filing 3-6 at 3, 7; filing 3-9 at 2. Search warrants were executed at, among other places, the Grand Island and Worthington facilities, as well as Packers Sanitation's own facilities. Filing 3-1 at 4-5, 9; filing 3-2 at 4-5; filing 3-3 at 3-4; filing 3-5 at 3; filing 3-6 at 3-4; filing 3-7 at 2-3.

The Secretary's investigators interviewed children who reported working for Packers Sanitation under the age of 16. Filing 3-2 at 9-11; filing 3-3 at 8-9; filing 3-9 at 6; filing 3-12 at 6. School records and other documentation were used to verify ages of the children involved. Filing 3-1 at 10-11; filing 3-2 at 9-15; filing 3-5 at 12; filing 3-6 at 5-7; filing 3-9 at 6; filing 3-12 at 6. Some children reported working long hours or overnight shifts. Filing 3-1 at 10-11; filing 3-2 at 9-12; filing 3-6 at 7; filing 3-10 at 5-6; filing 3-11 at 6. Other children reported working on power-driven machines or on the kill floor. Filing 3-1 at 11; filing 3-2 at 10-15; filing 3-3 at 9-10; filing 3-6 at 6; filing 3-9 at 5-6; filing 3-10 at 5-6. Investigators surveilling and searching the facilities also observed workers who, based on their size and appearance, were likely underaged. Filing 3-1 at 8; filing 3-2 at 3; filing 3-3 at 3; filing 3-5 at 2-3, 5-6; filing 3-6 at 3-4; filing 3-9 at 2-3; filing 3-12 at 3. Confidential informants also reported child laborers. Filing 3-1 at 4. And records suggest that many other children, not interviewed, worked under the same conditions. *See* filing 3-2 at 15-20; filing 3-5 at 11-12; *see also* filing 3-7 at 4-5.

In addition, the Secretary's evidence suggests that Packers Sanitation attempted to interfere with his investigation. Packers Sanitation employees attempted to prevent investigators from gathering evidence pursuant to search warrants, attempted to prevent investigators from interviewing employees,

and may have spoliated evidence. Filing 3-1 at 8-9; filing 3-2 at 6-7; filing 3-5 at 9-10; filing 3-6 at 4-5; filing 3-11 at 5; filing 3-13 at 3.

## DISCUSSION

In determining whether to grant a temporary restraining order, the Court must consider the factors set forth in *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). Those factors include the probability that the movant will succeed on the merits, the threat of irreparable harm to the movant, the public interest, and the state of balance between this harm and the injury that granting the injunction will inflict on other parties. *See id.* at 114. No single factor is dispositive, and the burden is on the movant to establish the propriety of the remedy. *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

### LIKELIHOOD OF SUCCESS ON THE MERITS

In deciding whether to grant a preliminary injunction, likelihood of success on the merits is the most significant factor. *Laclede Gas Co. v. St. Charles Cnty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). A party seeking injunctive relief need not necessarily show more than a 50 percent likelihood that it will prevail on the merits. *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731 (8th Cir. 2008). But the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013).

The Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, prohibits an employer from employing "any oppressive child labor in commerce or in the production of goods for commerce or in any enterprise engaged in commerce or in the production of goods for commerce." § 232(c). "Oppressive child labor" includes employing any child under 16 years of age and employing a child

between 16 and 18 years of age in any occupation which the Secretary declares to be particularly hazardous or detrimental to the children's well-being. § 203(l). The Secretary has declared several occupations "in the operation of power-driven meat-processing machines and occupations involving slaughtering, meat and poultry packing, processing, or rendering" to be hazardous or detrimental to children between 16 and 18. 29 C.F.R. § 570.61. In addition, the Secretary has limited the hours that children can work, both when school is in session and when it is not. *See* 29 C.F.R. § 570.35.

The Secretary's evidence, as summarized above, suggests a strong likelihood of success on his claims that Packers Sanitation unlawfully employed child laborers. In particular, there is strong evidence that children under 16 were employed and that children of varying ages were employed for hours, and performing tasks, that are prohibited by federal law.

## IRREPARABLE HARM

A preliminary injunction cannot issue without a showing of irreparable harm. *Dataphase*, 640 F.2d at 114 n.9. To show a threat of irreparable harm, the movant must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief. *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011). Stated differently, the harm "must be actual and not theoretical." *Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). And harm is not irreparable when a party can be fully compensated for its injuries through an award of damages. *Gen. Motors Corp. v. Harry Brown's, LLC,* 563 F.3d 312, 319 (8th Cir. 2009).

The Court has little difficulty concluding that any ongoing use of child labor constitutes irreparable harm to the children involved. *See Brennan v. Correa,* 513 F.2d 161, 163 (8th Cir. 1975); *Lenroot v. Interstate Bakeries Corp.*,

146 F.2d 325, 327 (8th Cir. 1945). And, although the evidence of spoliation is not as strong as that of the underlying violations of labor law, the Court also finds a threat of irreparable harm associated with interference with the Secretary's investigation. It is reasonable to infer, from the record, that many of the children and witnesses involved may be undocumented or transient, and that documentary evidence may be particularly important. It is also reasonable to infer that the possible undocumented status of children and witnesses may offer a party seeking to interfere with an investigation the sort of leverage that could be used to prevent full cooperation.

### REMAINING DATAPHASE FACTORS

Finally, the Court must consider the balance of harms between the parties, and the public interest. *See Dataphase,* 640 F.2d at 114. Because a preliminary injunction is an extraordinary remedy never awarded as of right, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief. *Winter,* 555 U.S. at 24.

The public interest here is represented by the Fair Labor Standards Act and implementing regulations promulgated by the Department of Labor, which the evidence suggests have been directly contravened here. *See Lenroot,* 146 F.2d at 327. The public interest clearly weighs in favor of acting to prevent such conduct. And while the record at this point doesn't provide much of a basis to assess the effect on Packers Sanitation of the requested injunction, the Court is not persuaded that any *legitimate* interest could be affected, as the scope of the Court's injunction largely tracks legal obligations to which Packers Sanitation was already subject.

CONCLUSION

Accordingly, the Court will grant the Secretary's motion in part, and issue this temporary restraining order. Whether this order matures into a preliminary injunction will be determined after Packers Sanitation has an opportunity to be heard.

The Court notes that the scope of the Secretary's requested injunction includes enjoining Packers Sanitation from "refusing to provide information to the Department of Labor to aid in its investigation." Filing 2 at 2. While the Court will grant that request to a degree, it will be modified somewhat: Packers Sanitation and its employees have legal rights, not least of which includes the Fifth Amendment, and the Court is hesitant to issue a ruling in terms that may not be consistent with the rights of the defendant and rules of discovery. So, while the Court will direct Packers Sanitation not to interfere with the Secretary's investigation, its required compliance will be cabined by its legal obligation to produce information.

IT IS ORDERED:

1. The Secretary's Motion for a Temporary Restraining Order and Preliminary Injunction (filing 2) is granted in part as follows:

   a) Packers Sanitation and anyone acting in active concert or participation with it shall immediately cease and refrain from employing oppressive child labor as defined in 29 U.S.C. § 203(l) and its implementing regulations.

    b) Packers Sanitation and anyone acting in active concert or participation with it shall comply with the Department of Labor's lawful demands for information to aid in its investigation.

    c) From this date forward, Packers Sanitation and anyone acting in active concert or participation with it are enjoined from destroying or disposing of any information or documents relevant to the Secretary's investigation.

    d) Packers Sanitation and anyone acting in active concert or participation with it are enjoined from instructing employees not to speak to the Department of Labor, or otherwise preventing, discouraging, surveilling, or threatening employees from cooperating with the Department of Labor, and from retaliating against any employees who participate in the investigation.

2. This order is effective immediately and shall remain in full force for a period up to and including November 23, 2022, unless extended pursuant to Fed. R. Civ. P. 65(b)(2).

3. This order shall bind any of the following who receive actual notice of it: the parties; their officers, agents, servants, employees, and attorneys; and any other persons who are in active concert or participation with them.

4. A hearing on preliminary injunction, pursuant to Fed. R. Civ. P. 65(b)(3), is set before the undersigned for <u>November 23, 2022, at 11:00 a.m.</u> in Courtroom 1, Robert V. Denney Federal Building and U.S. Courthouse, Lincoln, Nebraska. <u>A corporate officer of Packers Sanitation with authority to speak for the company shall be present at the hearing</u>. At that hearing, the Court will consider whether the terms of this order shall be extended, modified, or dissolved.

Dated this 10th day of November, 2022.

BY THE COURT:

John M. Gerrard
United States District Judge