IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARTIN J. WALSH,<br>SECRETARY OF LABOR<br>U.S. DEPARTMENT OF LABOR,<br><br>    Plaintiff,<br><br>v.<br><br>PACKERS SANITATION SERVICES, INC., LTD.,<br><br>    Defendant. | No. CV: 4:22-CV-03246<br><br>**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO QUASH AND/OR MOTION FOR PROTECTIVE ORDER AND FOR EXPEDITED RELIEF** |

Defendant Packers Sanitation Services, LLC, named in the Complaint (Doc. 1) as Packers Sanitation Services, Inc., Ltd. ("PSSI" or the "Company"), files this reply brief in further support of its Motion to Quash and/or Motion for Protective Order and Expedited Relief (Doc. 28), and to address arguments made by the Secretary in its Opposition Brief (Doc. 33) that are beyond the scope of the Company's motion.

The Secretary's Opposition Brief disingenuously accuses PSSI of seeking to impede its investigation. The Secretary, however, concedes that PSSI has at all times cooperated in its investigation, including by producing several gigabytes of data in response to the warrants that it produced to PSSI. The Secretary has already filed returns for all of the warrants, without making a single motion, nor even any objection or complaint of non-compliance by PSSI, with the warrants. PSSI has not interfered in any way with the Secretary's investigation. PSSI's legitimate concern, however, is that the Secretary has, following an investigation, commenced a civil action

1

and, therefore, must follow the rules of procedure to obtain *new* information pertaining to the subject of this action.

Judge Gerrard recognized that a line must be drawn between the Secretary's investigative procedures and "the rules of discovery" in his November 10th Temporary Restraining Order. (Doc. 8, p. 6.) PSSI is not, as the Secretary contends, seeking to interfere with any investigation. Rather, PSSI is exercising its right to petition the Court to enforce the Rules of Civil Procedure that apply equally to both parties.

I. **PSSI Fully Cooperated in the Investigation, and Continues to Cooperate.**

From the time that the Secretary arrived at multiple PSSI worksites with warrants, PSSI has worked tirelessly to produce a massive set of records to the Secretary. This included many supplemental requests for documents that the Secretary made prior to his filing of the Complaint. Moreover, since the filing of the Complaint, as the Secretary concedes, PSSI has responded to requests to provide any information that was subject to the warrants that may have been inadvertently left out of the production. With a production of documents this large, it is expected that some items may have been left out, and PSSI has never objected to providing such records. In fact, PSSI continued producing such records up to and including this week.

The Secretary now makes an issue of the scope of the warrant for PSSI's Kieler, Wisconsin office. That warrant granted the Secretary the authority to inspect "the establishment" located in Kieler, Wisconsin. (Doc. 28-3, p. 4 of 39.) The Secretary interpreted that warrant to cover all 400+ PSSI locations. PSSI respectfully disagreed with the Secretary's reading of the scope of the warrant, and informed the Secretary that producing all of the requested documents for 400+ locations was not feasible in the 14-day timeframe at issue. As the Secretary concedes on page 9 of his Opposition Brief, PSSI and the Secretary negotiated a resolution in which PSSI would

produce all requested records for a sample of 50 sites. It bears noting that a 50-location wage and hour investigation is extraordinarily large, most investigations pertain to one, or sometimes a few, sites. But, PSSI had nothing to hide and agreed to produce as much information as practically possible in the 14-day timeframe and, therefore, agreed to the 50-site production. Producing this volume of documents required an extraordinary effort from PSSI and its third-party vendors. And, as previously stated, PSSI agrees to produce any further documents that were intended to be included in that production.

The Secretary never complained about PSSI's responses and production during the investigation and filed returns for all of its warrant without incident.

## II. The Secretary is Improperly Using his Investigatory Powers to Develop Evidence for this Action.

The Secretary makes clear in his filings that the case he brought with his Complaint is nationwide in scope. Indeed, the Secretary requested a nationwide injunction. (Doc. 3, p. 41 of 43.) The new, updated, employee rosters that the Secretary requested from PSSI falls within this scope. (Doc. 28-3, p. 32 of 39.) The Secretary's subpoena to Asure also seeks information that falls within the scope of its Complaint and request for preliminary injunction. (Doc. 28-3, p. 36-39 of39.) Moreover, on the parties' November 30, 2022 meet and confer teleconference, the Secretary revealed to PSSI for the first time that he has issued additional subpoenas, without notice to PSSI, since the time he filed his Complaint in this matter.

It is axiomatic that "an investigation terminates once suit has been filed." *Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1546 (D.C. Cir. 1994). Once the government files suit, it cannot use its investigatory powers to obtain evidence for the litigation. *United States v. Sellaro*, 514 F.2d 114, 122 (8th Cir. 1973) (government cannot use the investigation tools of the grand jury to gather evidence for trial in a filed action). In this matter, the Secretary had the choice whether to file a

lawsuit or continue his investigation. The Secretary, by his own choice, chose to end his investigation and submit to the jurisdiction of this Court and the Rules of Civil Procedure. As such, he must follow those Rules of Civil Procedure in order to obtain discovery from the Company or third parties.

The Secretary disingenuously claims that he is using his investigative process to develop evidence for the possible issuance of civil money penalties. (Doc. 33, p. 4.) Even if this were true, any civil penalty proceeding would concern the exact same subject at issue in the Secretary's Complaint in this matter. Civil money penalty proceedings, which are litigated before Department of Labor Administrative Law Judges (ALJs), are supplemental to the underlying federal district court litigation. That is why ALJs typically stay the civil money penalty proceeding while the underlying district court case is pending. *See e.g., In re Contingent Care, LLC* 2017 BL 111176, 2011-FLS-00008 (ALJ Apr. 3, 2017) (attached as Exhibit A[1]) (staying civil penalty case while underlying case is litigated in district court); *In re Five M's, LLC*, 2018 BL 427449, 2015-FLS-00010 (ALJ May 25, 2018) (attached as Exhibit B) (staying civil penalty matter). Moreover, the ALJs rely on the findings of the district court matter, pursuant to the doctrine of collateral estoppel, in the civil money penalty cases. *See e.g., In re Five M's, LLC* 208 BL 427449; *In re ZL Restaurant Corp.*, 2018 BL 42834, ARB Case No. 16-070 (ALJ Jan. 31, 2018) (attached as Exhibit C) (relying on findings of the district court). The civil money penalty proceeding may be a different ***process***, but if involves the ***same charge***. Thus, any evidence that is relevant to the civil money penalty case is relevant to this case, and vice-versa.

It also strains credibility for the Secretary to claim that he issued a subpoena to Asure on November 21st, with a deadline of November 23rd (the day before Thanksgiving), to obtain

---

[1] As a courtesy to the Court, PSSI is submitting the DOL ALJ decisions as Exhibits.

4

evidence for a speculative civil money penalty matter that does not yet exist, has no deadline, and would be stayed pending the outcome of this case. The Secretary's urgency is clearly driven by this pending action.

Moreover, the Secretary's own brief belies his claim that he is using his investigatory powers only for a separate matter. In the Brief he claims that he will "detail in subsequent filings" newly developed claims of alleged child labor violations. Clearly, the Secretary continues to use his investigatory process for this case.

### III. The Secretary Cannot Ignore Rule 45's Requirements In Order to Save His Case.

The Secretary expends significant effort explaining the investigative powers delegated to him by the FLSA. (Doc. 33, p. 5 of 14.) PSSI does not contest those powers. The issue, however, as explained above, is that the time for the use of those powers is now over. This is entirely a result of the Secretary's choice to file a lawsuit.

The Secretary argues that the Court cannot quash its subpoena because it is "not a Rule 45 subpoena." However, that is the exact point. The Secretary can now only issue subpoenas pursuant to Rule 45. Moreover, he cannot issue subpoenas in secret; instead, he must, pursuant to Rule 45 and LR 45.1, provide notice of the subpoenas to PSSI.

There is no exception to this rule on the basis that he stated in his brief in support of his motion for a TRO and PI that he would be "subpoenaing records from local school districts." (Doc. 33.) The Secretary implies that he is permitted to issue administrative subpoenas because PSSI did not object to that statement. The statement, however, is not objectionable. PSSI agrees that the Secretary can issue subpoenas—they just need to be issued pursuant to the rules of discovery.

The fundamental issue here is that the Secretary prematurely filed a Complaint and a motion for injunctive relief. Neither the Secretary's Complaint nor his Motion for a TRO and PI

plead that PSSI had knowledge of any alleged child labor violations. To establish a violation of the FLSA's child labor violations, the Secretary must show that the employer knew, or should have known upon reasonable inquiry, that a minor was performing prohibited work. *Gulf King Shrimp Co. v. Wirtz,* 407 F.2d 508, (5th Cir. 1969) (discussing *Lenroot v. Interstate Bakeries Corp.*, 146 F.2d 325, 328 (8th Cir. 1945) (Secretary must show that "employer either had knowledge that minors were illegally in his employ, or else had 'the opportunity through reasonable diligence to acquire knowledge.'"). The Secretary's own ALJs apply the same standard. *U.S. Dept. of Labor v. Southern Rock & Lime, Inc. et al.*, 2007-CLA-24 (ALJ 2010) (attached as Exhibit D). In *Southern Rock*, a Department of Labor ALJ held that an employer cannot be charged with child labor violations where it reasonably relied on the identification documents that an employee presented to it. *Id.* The Secretary now recognizes that he has no evidence of this necessary element of the alleged offense, and, in fact, he has not even pled that PSSI had knowledge.

The Secretary's own pleadings represent that the alleged minors at issue misrepresented their age. For example, the Secretary states that "Minor Child P disclosed they used a different name for work" and "Minor Child Q disclosed using two names." (Doc. 3, p. 23 of 43.) The Secretary has provided no documentation to PSSI (or the Court) that contradicts the identification documents that the employees presented to PSSI establishing that they were at least eighteen years old. In fact, the Secretary has not even identified who alleged Minor P and Minor Q are. More fundamentally, the Secretary has made no attempt to show how PSSI was on notice of the violations he alleges.

The Secretary is therefore scrambling to use his investigatory powers to find evidence to salvage his deficient case. The haphazard urgency of the Secretary's improper discovery efforts is on display in his Opposition Brief, wherein he claims to have found additional minor employees, including four that he alleged are currently employed by PSSI. The Secretary made this very serious allegation without offering a shred of evidence. Nor did he check to make sure that his allegations were correct even on their basic facts. The Secretary identified to PSSI the four persons whom he alleges were minors that currently employed by PSSI. However, PSSI was not currently employing any of the four identified persons. Moreover, each of the four had, when they were employed by PSSI, presented government identification stating that they were at least eighteen years old, and PSSI verified their identity through the government's E-Verify system. The Secretary has provided not a shred of evidence to establish that any of these employees were minors at any relevant time.

The Secretary, however, cannot abuse his investigatory powers in such a manner. Instead, the Secretary must play by the same discovery rules as PSSI, which requires the Secretary to gather and disclose evidence in an orderly and transparent fashion, not in a haphazard, secretive, ambush-like fashion.

### IV.     PSSI Is Prejudiced by The Secretary's Abuse of Discovery.

With the Secretary attempting to use his investigatory powers to develop evidence of the allegations at issue, he attempts to gather information freely—along with the power for contempt charges—while at the same time refusing to produce one shred of its alleged evidence to PSSI. Moreover, by issuing administrative subpoenas, instead of Rule 45 subpoenas, the Secretary deprives PSSI of notice of the subpoena, as well as any opportunity object or file a motion before

service of the subpoena.  Such a lopsided balance of access to evidence deprives PSSI of due process and significantly impacts PSSI's ability to defend itself against the Secretary's claims.

**CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court, pursuant to its inherent powers to manage discovery, issue a protective order directing the Secretary to cease engaging discovery outside of the rules of discovery.  Moreover, PSSI requests that the Court quash the subpoena to Asure, as well as any other administrative subpoenas that the Secretary issued in connection with this matter.

Dated this 1st day of December, 2022

Respectfully submitted,

*/s/ Patrick M. Dalin*
J. Randall Coffey
**FISHER & PHILLIPS LLP**
46 Penn Centre
4622 Pennsylvania Avenue, Suite 910
Kansas City, MO 64112
Phone:  (816) 842.8770
Facsimile:  (816) 842.8767
Email:  rcoffey@fisherphillips.com

Patrick M. Dalin
**FISHER & PHILLIPS LLP**
Two Logan Square
100 N. 18th Street, 12th Floor
Philadelphia, PA 19103
Phone: (610) 230-6112
Facsimile: (610) 230-2151
Email: pdalin@fisherphillips.com
*Admitted Pro Hac Vice*

and

Gillian G. O'Hara #22414
**KUTAK ROCK LLP**
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186
Phone: (402) 346-6000
Facsimile: (402) 346-1148
Email: gigi.ohara@kutakrock.com

ATTORNEYS FOR DEFENDANT
PACKERS SANITATION SERVICES, LLC

# CERTIFICATE OF SERVICE

The undersigned certifies that on this 1st day of December, 2022, the foregoing was filed via the Court's Electronic Filing System and service made via the same, to:

    Ambriel Renn-Scanlan
    Traci Martin
    Laura O'Reilly
    U.S. Department of Labor
    Office of the Solicitor
    2300 Main Street, Suite 10100
    Kansas City, Missouri 64108
    Phone: 816.285.7260
    Email: renn-scanlan.ambriel@dol.gov
    Email: martin.traci.e@dol.gov
    Email: oreilly.laura.m@dol.gov
    Counsel for Plaintiff

                                        /s/ *Patrick M. Dalin*
                                        Attorney for Defendant