

# Exhibit D

**U.S. Department of Labor**

Office of Administrative Law Judges
5100 Village Walk, Suite 200
Covington, LA 70433-2846

(985) 809-5173
(985) 893-7351 (Fax)




**Issue Date: 13 August 2010**

**CASE NOS.: 2007-CLA-24**
**2007-CLA-25**

**IN THE MATTER OF**

**ADMINISTRATOR, WAGE AND HOUR DIVISION, U.S. DEPARTMENT OF LABOR**
**Plaintiff**

**v.**

**SOUTHERN ROCK & LIME, INC. and JAMES CLEMONS, Individually**

**and**

**FULGENCIO CASTILLO**
**Respondents**

**APPEARANCES:**

**TREMELLE HOWARD-FISHBURN, ESQ.**
**On behalf of Plaintiff**

**LEE KNOWLES, ESQ.**
**On behalf of Respondent Fulgencio Castillo**

**ABNER R. POWELL, ESQ.**
**On behalf of Respondent Southern Rock and Lime, Inc. and James Clemons, Individually**

**BEFORE: C. RICHARD AVERY**
**Administrative Law Judge**

## DECISION AND ORDER

These consolidated cases arise under the Fair Labor Standards Act of 1938, as amended 29 U.S.C. § 201 *et. seq.* (the Act), and the regulations promulgated thereunder at 29 C.F.R. Parts 570, 578, and 579. On January 25, 2006, and February 13, 2006, pursuant to Section 16(e) of the Act, the Deputy Director, Employment Standards Administration, Wage and Hour Division, United States Department of Labor imposed civil money penalties in the amount of $22,302.00 against each of the Respondents as the result of alleged violations of two hazardous occupation violations (29 C.F.R. § 570.52 and 29 C.F.R. § 570.60) and the records-keeping provision of the Act.

Respondents timely filed a request for a hearing to contest the propriety of the civil money penalties issued by the Prosecuting Party, and for a re-determination of such penalties. A formal hearing was held on April 27, 2010, in Geneva, Alabama, with all parties being afforded full opportunity to present evidence. The parties were also granted time to file post-hearing briefs. This decision is based on the entire record.[1]

### Stipulations

Prior to the hearing, the parties agreed to the following stipulations of fact (ALJX-4, pp. 5-7):

1. Southern Rock & Lime, Inc., operated an open-pit gravel mine.

2. James Clemons was the sole owner of Southern Rock & Lime, Inc., on November 4, 2005.

3. Southern Rock & Lime, Inc., and James Clemons employed Primitivo Cuaquuaha as a laborer.

4. On November 4, 2005, Primitivo Cuaquuaha was operating a tractor at the mine.

5. On November 4, 2005, Primitivo Cuaquuaha was fatally injured while operating this tractor.

6. As a result of this fatality, the Mine Safety and Health Administration issued citations to the mine.

---

[1] The following abbreviations will be used throughout this decision when citing evidence of record: Administrative Law Judge Exhibits (ALJX-__, p. __); Prosecuting Party Exhibits (PX-__, p. __); and Respondents Exhibits (RX-__, p. __).

7. As a result of this fatality, the Wage and Hour Division conducted an investigation of the mine and its operations.

8. Southern Rock & Lime, Inc., and James Clemons had a business agreement with Fulgencio Castillo wherein Mr. Castillo provided workers to the mine.

9. The terms of the agreement among Respondents required Mr. Castillo to pay the workers directly and provide worker's compensation insurance for the workers.

10. Southern Rock & Lime, Inc., paid Mr. Castillo, who then paid the workers.

11. Mr. Castillo set the rate of pay for the workers.

12. Mr. Castillo provided a work van to the workers that allowed them to get to Southern Rock & Lime, Inc.

13. Mr. Castillo had the authority to discipline the workers that were provided to Southern Rock & Lime, Inc.

14. Mr. Clemons also had the authority to discipline these workers.

15. Mr. Clemons supervised and controlled the employees' work schedules.

16. Mr. Castillo controlled the employees' work conditions.

17. Southern Rock & Lime, Inc., maintained copies of the workers' identification records.

18. Mr. Castillo maintained employment records for the workers, including forms I-9 and W-4.

## Issues

It his post-hearing brief, the Administrator identified the following five issues for adjudication:

1. Whether Fulgencio Castillo and Southern Rock & Lime, Inc., and James Clemons, individually, are employers under the Act;

2. Whether Respondents violated 29 C.F.R. § 570.60 by allowing Primitivo Cuaquuaha to work at the mine;

3. Whether Respondents violated 29 C.F.R. § 570.52 by allowing Primitivo Cuaquuaha to operate a vehicle in or about the mine;

4. Whether Respondents violated the records-keeping provision of the Act; and

5. Whether the civil money penalties issued in this case are appropriate.

**Findings of Fact**

Based upon my observation of the appearance and demeanor of the witnesses who testified at the hearing, and upon a thorough analysis of the entire record in this case, with due consideration accorded to the arguments of the parties, and applicable statutory provisions, regulations, and relevant case law, I hereby make the following findings of fact:

Mr. Castillo provided labor to Southern Rock & Lime, Inc., and Mr. Clemons. Mr. Castillo hired these workers, paid their wages, and furnished worker's compensation insurance for them. Mr. Clemons used these laborers for work in an open-pit quarry mine and had control over their actions. One of these laborers, Primitivo Cuaquuaha, was killed when the dump truck he was driving overturned.

The deceased had furnished to Mr. Castillo his Resident Alien card and Social Security card as proof of his stated age of twenty-one. (PX-4). Mr. Castillo thought the deceased looked his stated age and saw no reason to question this. The documentation relied upon by Mr. Castillo was also provided to Mr. Clemons.

Following Primitivo Cuaquuaha's death, the Department of Labor opened an investigation into the operations at the mine and acquired the deceased's death certificate, which had been issued by the State of Alabama. (PX-3). The birth date on that document placed the deceased at age seventeen at the time of his death. However, the document appeared to have been altered, and a different font was used in the birth date section.

Based solely upon the altered death certificate, the Department of Labor sought penalties from each of the Respondents. None of the Respondents had any prior violations, and they all cooperated in the investigation and pledged future diligence. Nevertheless, each Respondent was charged $22,302.00 in civil penalties for alleged hazardous occupations and records-keeping violations.

Mr. Anthony Jacobs, the investigator assigned to this case, testified this was his first investigation involving a resident alien. Relying only on the death certificate provided by the State of Alabama, he determined the deceased's age to be seventeen at the time of his death. He acknowledged the Resident Alien card and Social Security card provided to Respondents by the deceased; however, he stated someone with the

Department of Labor had discovered these cards were invalid because they had been issued to another individual. Mr. Jacobs also acknowledged a Resident Alien Employment Verification Form completed by the deceased. (PX-5; RX-1).

Mr. Jacobs decided none of the documents offered by Respondents as proof of the deceased's age were "legal documents," and assessed maximum fines against Respondents, which were calculated with the aid of computer software. His supervisor reviewed these assessments and agreed maximum penalties should be levied because Respondents had not shown due diligence. Mr. Jacobs opined Respondents should have required a driver's license, state identification card, or some other form of identification specifically mentioned in 29 C.F.R. § 570.5 as proof of age.

On cross-examination, Mr. Jacobs agreed the death certificate was the only evidence he had relied upon in drawing his conclusions. He agreed if the certificate had been altered, that could lead to a different result. He also agreed immigration law requires different documentation than that required by the Department of Labor, and that, with respect to immigration law, Respondents had done everything required of them. Mr. Jacobs also agreed due diligence is not necessary if one does not suspect an employee is underage or that his identification is invalid.

John Bates, Director of Enforcement for the Wage and Hour Division (Southeast Region), did not participate in the investigation of this case, but he agreed the results of the investigation were premised on the assumption the deceased was a minor at the time of his death.

Mr. Castillo testified he had examined the identification offered by the deceased and saw no need to investigate further because the deceased appeared to be his stated age of twenty-one. Mrs. Castillo verified she signed the resident alien employment verification form completed by the deceased. (PX-5; RX-1).

## Conclusions of Law

### Whether Respondents are Employers

Under the Act, an "employer" is anyone who "suffers or permits" an individual to work, including, "any person acting directly or indirectly in the interest of an employer." 29 U.S.C. § 203. The evidence in this case demonstrates each of the Respondents "employed" Primitivo Cuaquuaha for purposes of the Act.

Southern Rock & Lime, Inc., and James Clemons, individually, have stipulated they employed Primitivo Cuaquuaha as a laborer. Therefore, I find they were "employers" under the Act. Mr. Castillo has stipulated he had control over the worker he provided to Southern Rock & Lime, Inc., determined their rate of pay, provided them with transportation, and maintained employment records. Based on this evidence, I find Mr. Castillo was also an "employer" for purposes of the Act.

**Alleged Hazardous Occupations Violations**

The Administrator contends Respondents violated both 29 C.F.R. § 570.52 and 29 C.F.R. § 570.60 by permitting Primitivo Cuaquuaha to work at the mine and to operate a motor vehicle on its premises. Based on the stipulations, there is no doubt Respondents allowed Primitivo Cuaquuaha to perform these activities. However, Respondents contend they have not violated these provisions because there is no reliable proof Primitivo Cuaquuaha was a minor at the time.

The Administrator relies upon the death certificate issued by the State of Alabama as proof Primitivo Cuaquuaha was only seventeen at the time of his death. (PX-3). However, as noted above, that document appears to have been altered because the deceased's birth date appears to have been "whited-out" and then re-typed in a different font from the rest of the document. Therefore, I find the death certificate to be unreliable.

The Administrator further argues Respondents only defense against an unwitting violation of these provisions would have been to procure a certificate of age from Primitivo Cuaquuaha, as provided in 29 C.F.R. § 570.5, which states in relevant part, "[c]ertificates issued and effective pursuant to this subpart furnish an employer with proof of the age of a minor employee upon which he *may* rely in determining whether the minor is at least the minimum age for the occupation in which he is to be employed." 29 C.F.R. § 570.5(a) (emphasis added). However, that provision goes on to state that such a certificate need only be obtained by an employer who has "any reason to believe the minor's age may be below the applicable minimum for the occupation in which he is to be employed." 29 C.F.R. § 570.5(c).

In this case, Respondents relied upon the Resident Alien and Social Security cards provided to them by Primitivo Cuaquuaha as proof of his age as twenty-one.[2] (PX-4). Although these forms of identification are not specifically listed in the above-cited federal regulations as certificates of age, the permissive language of 29 C.F.R. § 570.5(a)

[2] Although Investigator Jacobs suggested these cards were invalid at the hearing, he could not recall who had given him this information. Moreover, the Administrator has offered no evidence of their invalidity.

suggests employers may also rely on other forms of identification. Moreover, Mr. Castillo testified he had no reason to believe Primitivo Cuaquuaha was under the age of twenty-one. Therefore, according to 29 C.F.R. § 570.5(c) he was under no obligation to obtain a certificate of age.

Based on this, I find there is a lack of evidence to indicate Respondents violated the hazardous occupation provisions for which they have been charged. The Administrator's sole basis for assessing these charges was the date of birth listed on Primitivo Cuaquuaha's death certificate, which I have found unreliable, and Respondents reasonably relied on the identification provided them. Therefore, I find Respondents cannot be charged with these violations.

**Alleged Records-Keeping Violations**

Each Respondent was also assessed a civil money penalty for allegedly violating the records-keeping provision of the Act. This provision requires, among other things, that Employers maintain records of each employee's date of birth if under the age of nineteen. 29 C.F.R. § 516.2(a)(3). In this case, each Respondent maintained on file employment records for Primitivo Cuaquuaha, including his Resident Alien and Social Security cards. (PX-4). Again, the Administrator's sole piece of evidence against Respondents is the unreliable death certificate issued by the State of Alabama. Therefore, I find Respondents did not violate this provision of the Act.

**ORDER**

Based on the foregoing, I find the Respondents have not violated either the hazardous occupation or records-keeping provisions of the Act. Therefore, the imposition of civil money penalties in this case is inappropriate.

**So ORDERED** this 13th day of August, 2010, at Covington, Louisiana.

A

**C. RICHARD AVERY**
**Administrative Law Judge**

**NOTICE OF APPEAL RIGHTS**: If you are dissatisfied with the administrative law judge's decision, you may file an appeal with the Administrative Review Board ("Board"). To be timely, your appeal must be filed with the Board within thirty (30) days of the date of issuance of the administrative law judge's decision. *See* 29 C.F.R. § 580.13. The address for the Board is: Administrative Review Board, U.S. Department of Labor, Suite S-5220, 200 Constitution Avenue, NW, Washington, DC 20210. *See* Secretary's Order 1-2002, 67 Fed. Reg. 64272 (2002). Once an appeal is filed, all inquiries and correspondence should be directed to the Board.

At the time you file the appeal with the Board, you must serve it on all parties as well as the Chief Administrative Law Judge, U.S. Department of Labor, Office of Administrative Law Judges, 800 K Street, NW, Suite 400-North, Washington, DC 20001-8001. *See* 29 C.F.R. § 580.13.

If no appeal is timely filed, then the administrative law judge's decision becomes the final order of the Secretary of Labor pursuant to 29 C.F.R. § 580.12(e).