IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARTIN J. WALSH, <br> SECRETARY OF LABOR, <br> U.S. DEPARTMENT OF LABOR, <br><br> Plaintiffs, <br><br> v. <br><br> PACKERS SANITATION SERVICES, <br> INC., LTD., <br><br> Defendant. | CIVIL ACTION NO. 4:22-CV-3246 |

## DECLARATION OF AIDA AYALA

I, Aida Ayala, hereby declare that the statements made in this Declaration, pursuant to 28 U.S.C. § 1746, are true and correct to the best of my knowledge and belief. I understand that false statements made herein are subject to the penalties of perjury and state as follows:

1. I am currently employed in the position of Supervisor of Packing with Packers Sanitation Services, LLC ("PSSI" or "Company") at the JBS Grand Island facility located at 555 South Stuhr Road in Grand Island, Nebraska ("Facility").

2. I am over 18 years of age, I am a resident of the State of Nebraska, and I am competent to testify to the matters stated in this declaration, and if called and sworn as a witness, I could and would testify competently and truthfully to the matters stated in it.

3. I have not been promised any benefit, or been coerced or threatened in any manner in exchange for the testimony in this declaration. I have been specifically informed that I am free to provide or decline to provide any information relating to the paragraphs below.

4. I make this declaration voluntarily and of my own free will.

5. I was hired in my current position on or about May 16, 2020. I have only worked for PSSI at this Facility. My duties primarily include distributing employees' personal protective equipment ("PPE"), ensuring employees follow all safety rules, walking the floor to make sure employees are following lockout/tagout procedure for equipment, and delivering employee replacement PPE, locks or hoses as needed. I also check chemicals and labels to verify employees are using the correct quantities in the spray concentration.

6. I was at the Facility on the night that the U.S. Department of Labor investigators were present. I was sitting in the cafeteria preparing my nightly reports and employees were checking in their PPE. A woman was walking up and down the aisles and I did not know who she was. An announcement came over the radio earlier in the night that there were visitors on the floor but I believed they were visiting from safety or food quality. The woman walked over to my table where I was working and she did not identify herself or her agency to me. She simply reached down and grabbed my cell phone off the table, which scared me.

7. She started speaking English to me. I am from El Salvador and I do not speak English. I did not understand what she was saying. I have now learned that she said, "Give me the telephone."

8. My cell phone was not in my hand at the time she grabbed it. It was turned off and sitting on the table next to me. After she grabbed the phone off the table, another investigator came over who spoke Spanish and asked if I used the phone for work. I told her it was my personal cell phone and I did not use it for work. I had not been on my phone so they could not access it without my private passcode. They made me give them my passcode so they could access my personal cell phone, which I did immediately.

9. I asked when I could get my cell phone back but said they did not know. They kept my phone all day. My mother was home caring for my ill six-year-old son while I worked. I needed to stay in touch with my mother in case my son's condition worsened or there was an emergency.

10. I do have the WhatsApp application loaded on my personal cell phone. The only people I communicate with on WhatsApp are my mother, sister and my son's father who is back in El Salvador. I was not deleting messages off WhatsApp at any time when they took my personal cell phone. I was not even on my phone at the time they took it. Rather, it was turned off and when they asked me for my private passcode I cooperated by writing it down for them. I was then denied access to my personal cell phone for a full day with a sick child at home, which frightened me.

11. Although I am a supervisor, the investigators interviewed me outside the presence of Company attorneys.

12. I have no knowledge of any PSSI employee deleting or destroying information related to the investigation by the U.S. Department of Labor, including on the night that they inspected the Facility.

13. I have no knowledge of anyone who is under the age of 18 working for PSSI at the Facility. I have never even heard a rumor that anyone was underage at PSSI. Even though I often hand out replacement PPE, I have never heard that any employee, who was later alleged to be under the age of 18 years old, received a chemical burn or other injury at PSSI.

14. Before signing this declaration, I was provided with a full opportunity to carefully review this Declaration and freely make any corrections and additions of any kind. I speak and

read almost exclusively Spanish. I understand that this Declaration was translated to Spanish in its entirety before signing.

Dated: _____                    _____
                                                              Aida Ayala

## CERTIFICATE OF TRANSLATION

I, Kelly Z. Varguez, a U.S. Court Certified Spanish Interpreter and ATA Certified Spanish>English translator do hereby certify that I am fluent in the Spanish and English languages and that I am competent and experienced in translating from English into Spanish. I further certify that to the best of my knowledge and belief, this translation of files in MARTIN J. WALSH, SECRETARY OF LABOR, U.S. DEPARTMENT OF LABOR v. PACKERS SANITATION SERVICES, INC., LTD., Court Case Number 4:22-CV-3246 is a true, correct, and complete translation from English into Spanish of the affidavits provided to me via email by the Defendant's Attorney Gigi O'Hara. I further certify that I have no personal relationship with the parties to this case nor financial interest in its outcome.

_____  11-28-2022
Kelly Varguez                     Date
U.S. Court Certified Spanish Interpreter
ATA Certified Spanish>English Translator
402-504-8170
P.O. Box 31102
Omaha, NE 68131
kelly@olanguagesolutions.com

GENERAL NOTARY - State of Nebraska
SARA SEYLER
My Comm. Exp. October 29, 2024

*Sara Seyler*

EN EL TRIBUNAL FEDERAL DE DISTRITO
DEL DISTRITO DE NEBRASKA

| | |
|---|---|
| MARTIN J. WALSH, SECRETARIO DE TRABAJO, DEPARTAMENTO DE TRABAJO DE LOS ESTADOS UNIDOS, | )<br>)<br>)<br>) |
| Partes actoras, | )<br>) |
| contra | )  CAUSA CIVIL NO. 4:22-CV-3246 |
| PACKERS SANITATION SERVICES, INC., LTD., | )<br>)<br>)<br>)<br>) |
| Damandado. | ) |

## DECLARACIÓN DE AIDA AYALA

Aida Ayala, la suscrita, por medio de la presente declaro que las afirmaciones hechas en esta Declaración, de conformidad con el 28 U.S.C. § 1746, son verdaderas y correctas a mi leal saber y entender. Entiendo que toda declaración falsar rendida en este documento está sujeta a las penas de perjurio. Declaro lo siguiente:

1. Actualmente trabajo como Supervisora de Empaque con Packers Sanitation Services, LLC ("PSSI" o "Compañía") en las instalaciones de JBS Grand Island ubicadas en 555 South Stuhr Road en Grand Island, Nebraska ("Instalaciones").

2. Tengo más de 18 años de edad, soy residente del Estado de Nebraska, y tengo la capacidad de testificar sobre los asuntos expuestos en esta declaración. Si fuera convocada y juramentada como testigo, sería capaz de declarar de manera verídica sobre los asuntos expuestos aquí. No se me ha prometido ningún beneficio, ni se me ha coaccionado o amenazado de ninguna manera para convencerme a presentar el testimonio contenido en esta declaración. Me han

informado que puedo proporcionar cualquier información relacionada con los párrafos siguientes y que puedo negarme a hacerlo.

3. Rindo esta declaración libre y voluntariamente.

4. Me contrataron para el puesto que tengo en la actualidad el día 16 de mayo de 2020 o aproximadamente en esa fecha. No he trabajado para PSSI en ningún otro lugar. Mis deberes principales incluyen distribuir el equipo de protección individual de los empleados ("PPE" por sus siglas en inglés); asegurar que los empleados sigan en las normas de seguridad; observar el área de trabajo para cerciorar que los empleados estén siguiendo el debido protocolo de bloqueo/etiquetado (*lockout/tagout*) con su equipo; y entregarles a los empleados su equipo de protección individual, sus cerrojos, y sus mangueras de recambio, según se necesite. También cotejo los productos químicos y las etiquetas para verificar que los empleados estén utilizando las cantidades correctas para la concentración del aerosol.

5. Estuve en las instalaciones la noche en que los investigadores del Departamento de Trabajo Federal estuvieron presentes. Estaba sentada en la cafetería preparando mis informes nocturnos y los empleados estaban devolviendo su equipo de protección individual. Una mujer se paseaba por los pasillos. Yo no sabía quién era. A primera hora de la noche se había anunciado por radio que había visitantes en la planta, pero creí que eran de seguridad o de calidad alimentaria. La mujer se acercó a la mesa en la que yo trabajaba y no se identificó ni identificó a su agencia. Simplemente se agachó y agarró mi celular de la mesa, lo que me asustó. Empezó a hablarme en inglés. Yo soy de El Salvador y no hablo inglés. No entendí lo que decía. Ahora me he enterado de que me dijo: "Dame el teléfono".

6. Mi celular no estaba en mi mano en el momento en que ella lo agarró. Estaba apagado y colocado a mi lado en la mesa. Después de que ella agarrara el teléfono de la mesa, se

acercó otra investigadora que hablaba español y me preguntó si usaba el teléfono para trabajar. Le dije que era mi celular personal y que no lo utilizaba para trabajar. No había estado usando mi teléfono por lo que no podían acceder a él sin mi contraseña. Me obligaron a darles mi contraseña para que pudieran acceder a mi celular personal, cosa que hice inmediatamente.

7. Les pregunté cuándo me devolverían mi celular, pero me dijeron que no sabían. Se quedaron con mi celular todo el día. Mi madre estaba en casa cuidando de mi hijo de seis años de edad mientras yo trabajaba porque él se encontraba enfermo. Necesitaba mantenerme en comunicación con mi madre en caso de que empeorara mi hijo o en caso de alguna urgencia.

8. Yo sí cuento con la aplicación WhatsApp en mi celular personal. Por medio de dicha aplicación, únicamente me comunico con mi madre, mi hermana, y el padre de mi hijo, quien se encuentra en El Salvador. Cuando ellos decomisaron mi celular, no lo había estado utilizando en ningún momento para borrar mensajes de la aplicación WhatsApp. Cuando me lo quitaron, ni siquiera lo había estado usando. Es más, el celular estaba apagado, y cuando me pidieron mi contraseña, yo cooperé y se lo escribí. Después, no se me permitió acceder a mi celular personal durante todo un día a pesar de tener a un hijo enfermo en casa, lo cual me asustó.

9. A pesar del hecho de que soy supervisora, los investigadores me entrevistaron sin que estuvieran presentes los abogados de la compañía.

10. Yo no tengo conocimiento alguno de ningún empleado de PSSI que haya borrado o destruido información relacionada con la investigación del Departamento de Trabajo Federal. Esto incluye la noche en la que se inspeccionaron las Instalaciones.

11. No tengo conocimiento alguno de ningún empleado de PSSI en estas Instalaciones que tenga menos de 18 años de edad. Jamás he escuchado ningún rumor de que esté trabajando un menor de edad en PSSI. A menudo, reparto equipo de protección individual de recambio; aun así,

nunca he escuchado ningún rumor de ningún empleado que haya sufrido quemaduras químicas o lesiones y que después se alegó que era menor de edad.

12. Antes de firmar esta declaración, se me dio una plena oportunidad de revisarla con cuidado y de corregir y agregar información de cualquier tipo libremente. Hablo y leo casi exclusivamente el español. Entiendo que antes de que yo firmara esta declaración, la misma fue traducida al español en su totalidad.

Fecha: 11-29-22

Aida Ayala