IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARTIN J. WALSH<br>SECRETARY OF LABOR<br>U.S. DEPARTMENT OF LABOR<br><br>Plaintiff,<br><br>PACKERS SANITATION SERVICES,<br>INC., LTD.,<br><br>Defendant. | CIVIL ACTION FILE<br>NO. 4:22-cv-3246 |

**DECLARATION OF DANIEL W. OLDENBURG**

I, Daniel W. Oldenburg, of Lincoln, Nebraska, under penalty of perjury and pursuant to the provisions of 28 U.S.C. § 1746, state as follows:

1. I am over the age 18 and competent in all respects to make this Declaration.

2. I am submitting this Declaration in support of Defendants' Opposition to the Secretary of the Department of Labor's Motion for Temporary Restraining Order (TRO) and Preliminary Injunction (PI).

3. In my opinion, in deciding to continue to enforce or terminate the TRO, and whether to issue a PI, among the factors that the Court should consider are: (1) The legal standard and employment obligations for I-9/E-Verify procedures that employers are required to follow. (2) The guidance issued by the United States Department of Homeland Security (DHS), United States Citizenship and Immigration Services (USCIS) and the Department of

1

Justice, Civil Right Division, formerly the Office of Special Counsel (OSC) for Immigration-Related Unfair Employment Practices, now the Office of Immigrant Employee Rights (IER).

I provide this Declaration in my capacity as a licensed attorney and my opinions are formed to a reasonable degree of professional certainty.

**BACKGROUND**

4. I am an attorney licensed and admitted to practice law in the jurisdictions of Nebraska and Colorado. I am also admitted to practice before the U.S. District Courts for the Districts of Nebraska and the Southern District of Texas. I have practiced in the areas of employment-based and business immigration law for 20 years. I am a 20-year member of the American Immigration Lawyers Association (AILA). I formerly worked for the legacy Immigration and Naturalization Service (INS), Dallas District Office. I regularly speak at legal conferences and present Continuing Legal Education (CLE) and other programs to attorneys and employers on employment and business-related immigration matters. I present annually on FORM I-9 compliance updates and emerging employment related immigration issues and considerations. I consistently represent employers with I-9 internal audits as well as defend employers in worksite enforcement actions and allegations of I-9 violations brought by Immigration and Custom Enforcement (ICE) / Homeland Security Investigations (HSI). Additionally, I advise employers on compliance with the anti-discrimination provisions and I-9 procedures provided in the

2

Immigration and Nationality Act (INA), the Immigrant Reform and Control Act (IRCA) and corresponding regulations.

**EMPLOYER OBLIGATIONS UNDER IRCA AND THE I-9 PROCESS**

5. Upon commencement of employment, employers are required to have every employee complete a FORM I-9 without regard to citizenship or national origin. An employee must provide documents from a designated list in order to establish both their identity and eligibility to work. Both employer and employee attest under penalty of perjury regarding the accuracy of the documents presented as proof of employment eligibility. Employers are required to physically examine the documentation their employee presents so the employer can complete Section 2 of FORM I-9. USCIS provides clear guidance that employers are not required to be experts in determining the underlying veracity or genuineness of the documents presented by employees. *USCIS I-9 Central, Examining Documents, https://www.uscis.gov/i-9-central/form-i-9-acceptable-documents/examining-documents*. Put differently, employers must accept documents that reasonably appear to be genuine and related to the person presenting them. However, if a new employee provides a document that does not reasonably appear to be genuine and related to them, the employer must reject that document and ask for other documentation that satisfies the requirements of FORM I-9.

The law specifically requires that employers:

A) Have any new hire fill out section 1 of the Form I-9 when they begin work;

3

B) Review the documents establishing the employee's identity and eligibility to work;

C) Properly complete Section 2 of the I-9 Form;

D) Create a case and submit to E-Verify if the Employer participates in E-Verify;

E) Retain the I-9 Form for 3 years after the date the person begins work or 1 year after the persons employment is terminated, whichever is later and

F) Make the I-9 Form available upon request for inspection to an ICE/HSI officer, or the Department of Labor (DOL) or Office of Immigration and Employee Rights (IER).

6. An employee must complete section 1 when they are hired. They must fill in the correct information and sign and date the form. If a translator is needed to help the employee, they must read the form to the employee and then sign the Preparer/Translator Certification section. While the employer cannot complete section 1 for the employee, it is the employer's responsibility to ensure that Section 1 is fully completed. Section 2 requires the employee to present the original documents that establish their identity and employment eligibility. The employee has the choice of which documents to present and must do so within 3 days of starting their employment.

7. The employer must inspect the originals of the documents presented and complete section 2. The title, issuing agency, number and any expiration date must be filled in and the form signed. If the employee cannot present the documents in 3 business days, they must provide a

receipt for the application of the documents, and a notation stating such made in the "document #" space. If a receipt is presented, the actual document must be provided within 90 days of employment.

IRCA delineated which documents may be submitted to establish both identity and employment eligibility. Three categories of documents were created:

    A. those that establish both identity and employment eligibility (List A);

    B. those that establish identity only (List B);

    C. those that establish work eligibility only (List C).

8.    Employers must review the original documents and affirm that they appear to be genuine and relate to the individual. Again, this does not require employers to be forensic document analysts. It is within the discretion of the employee as to which documents to present and it is illegal and potentially discriminatory for the employer to demand more or different documents, provided the ones submitted meet I-9 standards. If a document presented appears genuine and to belong to the person presenting it, the employer must accept it and cannot dismiss the employee for a document related reason. Employers are not permitted to request that the employee provide alternate documentation.

### A. DOCUMENTS THAT ESTABLISH BOTH IDENTITY AND EMPLOYMENT ELIGIBILITY

9.    The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) modified IRCA by reducing the number of permissible

documents. Congress removed the following from List A: certificates of naturalization, certificates of citizenship, re-entry permits, and refugee travel documents. The documents acceptable for List A are:

1. A U.S. passport;
2. An alien registration receipt card or permanent resident card, Form I-551;
3. A foreign passport with a temporary I-551 stamp;
4. An employment authorization document issued by the Service that contains a photograph (Form I-766, Form I-688, Form I-688A, or Form I-688B); and
5. In the case of a non-immigrant alien authorized to work for a specific employer, a foreign passport with Form I-94 bearing the same name as the passport and indicating an endorsement of the alien's non-immigrant status where the period of employment has not expired, and the proposed employment is not in conflict with any restrictions identified on the I-94.

### B. DOCUMENTS THAT ESTABLISH IDENTITY ONLY

10.     Wide ranges of documents are available in this category, though USCIS has proposed to remove some of the documents to clarify any confusion among employers. Acceptable documents are:

1. A driver's license or identification document issued by a state, federal, -or-local government containing a photo or other identifying information;
2. For individuals under age 16 or in a state that does not issue an appropriate identification document, documentation of personal identity found by the Attorney General to be reliable;
3. Native American tribal document;
4. Canadian drivers license in the case of a Canadian non-immigrant authorized to work pursuant to status with a specific employer;
5. ID card issued by federal, state or local government agencies or entities provided it contains a photograph or information such as name, date of birth, sex, height, eye color, and address;
6. School ID card with a photograph;
7. Voter's registration card;
8. U.S. Military card or draft record ;

9. Military dependent's ID card;
10. U.S. Coast Guard Merchant Mariner Card;
11. Driver's license issued by a Canadian government authority.

### C. DOCUMENTS THAT ESTABLISH EMPLOYMENT AUTHORIZATION ONLY

11.     Changes were again made to the list of acceptable documents by IIRIRA. The following documents are acceptable:

1. A social security card (other than a card stating it is not valid for employment).
2. A Native American tribal document
3. Certification of Birth Abroad issued by the Department of State (Form FS-545 or Form DS-1350)
4. A birth certificate issued by a state, county or municipal authority or outlying possession of the U.S. bearing an official seal
5. U.S. Citizen ID Card (INS Form I-197)
6. ID Card for use of Resident Citizen in the United States (INS Form I-179)
7. Unexpired employment authorization document issued by the INS (other than those listed under List A)

### RECRUITING, HIRING AND DISCRIMINATION ISSUES

12.     It is unlawful to discharge current employees, refuse to hire new employees, or discriminate against a person on the basis of their accent, name, foreign appearance or language. Employers must generally conduct their recruiting and hiring without regard to the citizenship or national origin of those authorized to work. However, it is legal for an employer to prefer a qualified U.S. citizen over a qualified alien on an individual basis. Any verification procedure an employer implements, must be carried out in the same manner for every new hire. Proof of work eligibility must be presented at the time of hire or when the employee begins

work. Requests for proof of eligibility should not be requested earlier in the recruiting, interviewing, or hiring process. An employer must review proof of work eligibility from every newly hired employee and not because of a person's name, appearance, or accent.

**E-VERIFY**

13. E-Verify, authorized by IIRIRA, is a web-based system through which some employers electronically confirm the employment eligibility of their employees. Employers can participate in E-Verify voluntarily and do so by signing a Memorandum Of Understanding (MOU). In the E-Verify process, employers create cases based on information taken from an employee's FORM I-9, Employment Eligibility Verification. E-Verify then electronically compares that information to records available to the U.S. Department of Homeland Security (DHS) and the Social Security Administration (SSA). The employer usually receives a response within a few seconds either confirming the employee's employment eligibility or indicating that the employee needs to take further action to complete the case. E-Verify, which is administered by SSA and USCIS, facilitates compliance with U.S. immigration law by providing E-Verify program support, user support, training and outreach, and developing innovative technological solutions in employment eligibility verification.

**A. TENATIVE NON-CONFIRMATION (MISMATCHES)**

14. E-Verify functions by comparing the information employees provide for Form I-9, against records available to SSA and DHS. Normally, if the information matches, the employee's case receives an employment

authorization result in E-Verify. If the information does not match, the case will receive what's called a tentative non-confirmation (mismatch) result and the employer must provide the employee an opportunity to resolve the mismatch. Employers must understand and follow the proper E-Verify procedures which are designed to ensure fair treatment and due process for all employees.
If E-Verify cannot instantly confirm employment eligibility, it must manually review government records. DHS generally responds to most of these cases in about 24 hours.

15. Employers must complete the following steps in E-Verify within 10 federal government working days after issuance of the mismatch result:

- Notify the employee of their mismatch result as soon as possible within the 10 days.
- Give your employee a copy of the Further Action Notice.
- Review the Further Action Notice with the employee in private and have them confirm whether the information listed at the top is correct.
    o If the information is incorrect, close the case and select the statement indicating the information was not correct. After the case is closed, create a new case for the employee with the correct information.
    o If the information is correct, proceed to the next step.
- The employee will decide whether to take action on the mismatch. Tell the employee they have 10 days from issuance of the mismatch to notify you whether they will take action to resolve the mismatch.
- If the employee does not provide their decision by the end of the 10th federal government working day after E-Verify issued the mismatch, then the employer can close the case.

A mismatch for an information against SSA records may result because:

- The employee has not updated his or her citizenship or immigration status with SSA
- The employee did not report a name change to SSA
- The employee's name, Social Security number or date of birth is incorrect in SSA records
- SSA records contain another type of mismatch

9

- The employer entered the employee's information incorrectly in E-Verify

A case can result in a mismatch with DHS because the employee's:

- Name, Alien Number, Form I-94 number and/or foreign passport number are incorrect in DHS records
- U.S. passport, passport card, driver's license, state ID, or foreign passport information could not be verified
- Information was not updated in the employee's DHS records
- Citizenship or immigration status changed
- Record contains another type of error
- Information was entered incorrectly in E-Verify by the employer

16. Employers can ensure they are engaged in identity verification and employment eligibility best practices when they become an E-Verify employer. E-Verify employers voluntarily take advantage of a tool the government has provided to assist employers in validating the identities and employment eligibility of their employees. In addition to the employer's physical examination of I-9 documents presented, E-Verify provides a robust and additional level of inquiry and confirmation. Based on my knowledge and experience, E-Verify is the gold standard for I-9 best practices because 1) E-Verify is not required, it remains voluntary for employers in the state of Nebraska and 2) the employee's name and social security number are run through both the SSA and the DHS databases.

17. An employer's use of E-Verify provides an extra layer of security to ensure that the documents presented by the employee to the employer genuinely relate to that individual. Beyond participating in E-Verify, an employer is limited in its ability to determine the actual veracity of the identity and work authorization documents presented by the

10

employee. Importantly, it is unlawful for an employer to rely on suspicion alone in determining whether an employee has presented fake or fraudulent documents. E-Verify is neither a shield nor a fail-safe detection method for employees who engage in identity theft or use fake documents for employment. Enrollment in E-Verify is, however demonstrative of employers who take their I-9 compliance and employee identity verification above and beyond what is legally required.

## ICE MUTUAL AGREEMENT BETWEEN GOVERNMENT AND EMPLOYERS (IMAGE)

18. IMAGE is U.S. Immigration and Customs Enforcement program whereby employers can voluntarily partner with ICE to enhance their I-9 compliance and minimizing vulnerabilities that lead to employee identity and eligibility issues. *https://www.ice.gov/outreach-programs/image*.

Through the IMAGE program, ICE communicates the model procedures and suggested best practices for employers to elevate their identify verification and employment eligibility process to a higher standard. IMAGE participation requires employers to do the following:

- Complete the IMAGE Self-Assessment Questionnaire (Application)
- Enroll in E-Verify within 60 days
- Establish a written hiring and employment eligibility verification policy that includes an internal Form I-9 audit at least once a year
- Submit to a Form I-9 Inspection
- Review and sign an official IMAGE partnership agreement with ICE

Through this program, ICE promulgates its "Best Employment Practices," which are:

- Use E-Verify, the DHS employment eligibility verification program, to verify the employment eligibility of all new hires.

- Use the Social Security Number Verification Service (SSNVS) for wage reporting purposes. Make a good faith effort to correct and verify the names and Social Security numbers of the current workforce and work with employees to resolve any discrepancies.

- Establish a written hiring and employment eligibility verification policy.

- Establish an internal compliance and training program related to the hiring and employment verification process, including completion of Form I-9, how to detect fraudulent use of documents in the verification process, and how to use E-Verify and SSNVS.

- Require the Form I-9 and E-Verify process to be conducted only by individuals who have received appropriate training and include a secondary review as part of each employee's verification to minimize the potential for a single individual to subvert the process.

- Arrange for annual Form I-9 audits by an external auditing firm or a trained employee not otherwise involved in the Form I-9 process.

- Establish a procedure to report to ICE credible information of suspected criminal misconduct in the employment eligibility verification process.

- Ensure that contractors and/or subcontractors establish procedures to comply with employment eligibility verification requirements. Encourage contractors and/or subcontractors to incorporate IMAGE Best Practices and when practicable incorporate the use of E-Verify in subcontractor agreements.

- Establish a protocol for responding to letters or other information received from federal and state government agencies indicating that there is a discrepancy between the agency's information and the information provided by the employer or employee (for example, "no match" letters received from the Social Security Administration) and provide employees with an opportunity to make a good faith effort to resolve the discrepancy when it is not due to employer error.

- Establish a tip line mechanism (inbox, email, etc.) for employees to report activity relating to the employment of unauthorized workers, and a protocol for responding to credible employee tips.

- Establish and maintain appropriate policies, practices and safeguards to ensure that authorized workers are not treated differently with respect to hiring, firing, or recruitment or referral for a fee or during the Form I-9, E-Verify or SSNVS processes because of citizenship status or national origin.
- Maintain copies of any documents accepted as proof of identity and/or employment authorization for all new hires.

Employers who seek to follow the model practices promulgated by ICE in IMAGE are employers who aspire to develop a more secure and stable workforce, raising awareness of fraudulent documents and identity theft. Employers following the suggested protocols provided by IMAGE will take their I-9 compliance to the next level. If E-Verify is the gold standard of I-9 compliance, following the IMAGE "Best Employment Practices" would be the platinum standard. Based on my experience and knowledge of the IMAGE program, employers who subscribe to ICE's recommendations in IMAGE are exercising optimal identity verification and employment eligibility procedures.

**USCIS GUIDANCE ON THE DISCOVERY OF UNATHORIZED EMPLOYEES**

19. If an employer identifies an employee who has been working unlawfully, they may give the employee another chance to provide proper documentation and accordingly amend the I-9. The employee should be given adequate time to submit the documents. If the employee cannot present acceptable documents, then the employer should terminate the employee. An employer can be penalized for the continued employment of an employee who cannot present acceptable documents.

## USCIS GUIDANCE ON AN EMPLOYEE THAT WAS FORMERLY UNAUTHORIZED AND WAS INITIALLY EMPLOYED BECAUSE THEY UNKNOWINGLY PROVIDED FAKE OR FRAUDULENT DOCUMENTS AT THE I-9 STAGE, BUT HAVE NOW BECOME AUTHORIZED

20. Employers are required to verify the identity and employment authorization of all newly hired employees by completing the FORM I-9. U.S.C. § 1324a. During this process, an employee may choose to present either one unexpired document from List A of the FORM I-9's List of Acceptable Documents or a combination of one unexpired List B document and one unexpired List C document. When reviewing the documentation presented, an employer must accept documents that reasonably appear to be genuine and to related to the person presenting the documents. Employers should then record the information about the document(s) presented in Section 2 of the FORM I-9. In a situation where an employer has properly completed the above steps, and an employee later provides the employer with new work authorization documentation, USCIS and explains that the previously presented documentation was not genuine. USCIS advises employers that the employee may continue to be employed, but that a new Form I-9 should be prepared using the updated identity and authorization information. USCIS further advises that:

> For example, an employee may have been working under a false identity, has subsequently obtained a work authorized immigration status in his or her true identity, and wishes to regularize his or her employment records . In that circumstance you should complete a new Form I-9. Write the original hire date in Section 2, and attach the new Form I-9 to the previously

14

completed Form I-9 and include a written explanation. In cases where an employee has worked for you using a false identity but is currently work authorized, the I-9 rules do not require termination of employment. However, there may be other laws, contractual obligations, or company policies that you should consider prior to taking action. USCIS Handbook For Employers at 24.

In other words, USCIS guidance recognizes that, despite an employer's best efforts, employees with fraudulent identification can slide past both the employer's document review and the government's E-Verify system. USCIS guidance allows for the employer to continue to employ the employee under his or her new identity, so long as the new identity documents provided pass I-9 examination and the E-Verify process set forth above.

21. Additionally, the DOJ's former Office of Special Counsel for Immigration-Related Unfair Employment Practices, now (IER) has provided general guidance in the form of Technical Assistance Letters (TAL), by which they have advised employers on compliance with the anti-discrimination provisions of the Immigration and Nationality Act (INA), 8 U.S.C. § 1324b. In situations where employees have recently legalized, employers need to be sure they are not engaging in any form of discrimination. The anti-discrimination provisions prohibit four types of employment-related discrimination: (1) citizenship or immigration status discrimination; (2) national origin discrimination; (3) unfair documentary practices during the employment eligibility verification (FORM I-9 and E-Verify) process ("document abuse"); and (4) retaliation for filing a charge, assisting an

investigation, or asserting rights under the anti-discrimination provision. 8 U.S.C. § 132b. The legacy OSC provided a TAL dated January 8, 2015, based on a question posed to OSC regarding the situation where an employee used fake or fraudulent documents at the I-9 stage but now has legalized. The TAL cites the exact guidance outlined in the M-274 on page 24. The TAL goes on to advise that:

> This Office cannot verify any violation of 8 U.S.C. § 1324b when an employer consistently accepts documents that employees choose to present that reasonably appear to be genuine and relate to the individual, regardless of whether an employee admits that the documents previously presented for employment eligibility verification were "not real." Nor can this Office identify any 1324b violation when an employer allows an employee to continue employment under the circumstances presented. However, to the extent an employer rejects valid work authorization documentation or terminates employees because of their citizenship or national origin, the employer could violate the anti-discrimination provision. Office of Special Counsel for Immigration-Related Unfair Employment Practices, Alberto Ruisanchez, Deputy Special Counsel, Technical Assistance Letter, January 8, 2015.

22. Employers are required to exercise reasonableness in their examination and review of I-9 documents provide by employees and to do so in a non-discriminatory manner. By following the I-9 procedures in place, participating in E-Verify, and following the USCIS guidance provided, employers will have taken all steps necessary to ensure they have validated the proffered identities of their employees and maintain an authorized workforce.

16

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 1st day of December, 2022.

_____
Daniel W. Oldenburg