IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARTIN J. WALSH,<br>SECRETARY OF LABOR,<br>U.S. DEPARTMENT OF LABOR,<br><br>      Plaintiff,<br><br>  v.<br><br>PACKERS SANITATION SERVICES,<br>INC., LTD.,<br><br>      Defendant. | CIVIL ACTION FILE<br>NO. 4:22-cv-3246 |

## SECRETARY OF LABOR'S REPLY TO DEFENDANT'S OPPOSITION TO THE SECRETARY'S MOTION FOR PRELIMINARY INJUNCTION

Pursuant to Local Rule 7.1(c), Plaintiff Martin J. Walsh, Secretary of Labor, United States Department of Labor ("Plaintiff" or "Secretary") files this Reply to the brief filed by Defendant Packers Sanitation Services, Inc., Ltd. ("PSSI") in opposition to the Secretary's Motion for a Temporary Restraining Order and Preliminary Injunction (ECF Doc. No. 38). The Secretary respectfully asks this Court to extend the temporary restraining order put in place on November 10, 2022, and enter a preliminary injunction against Defendant and its agents, barring them from violating sections 12(c) and 15(a)(4) of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA" or the "Act") by engaging in oppressive child labor.

PSSI has employed minor children under the age of 18 to clean slaughtering and meat packing establishments using caustic chemicals during the overnight shift. PSSI does not deny this. Since filing of his original Motion, the Secretary has identified an additional 19 minor children whom PSSI has employed, bringing the total number identified as of the time of this filing to 50 minor children in 5 different facilities located across three different states. Rebolledo Dec. ¶ 3, Exhibit 1. These are the "two handfuls" PSSI dismisses in its brief, as if the lives of fifty

minor children is a mere blip in its business operations. Even one minor child employed in such conditions is one too many.

In his initial Motion and brief in support, the Secretary presented declarations from eleven Investigators from the Department of Labor's Wage and Hour Division, who attested under the penalty of perjury to what they saw during their overnight tours of facilities in which PSSI operates: the constant noise, the limited visibility, the floors slickened with animal fat, and the standing water imbued with soap and floating meat. These Investigators documented the interference by PSSI management who demanded they refrain from taking photos and delete photos already taken; who hovered around employees being interviewed even after being asked to leave; and who attempted to delete[1] or refused to turn over documents. But, most importantly, these Investigators painstakingly explained to the Court the steps taken to ensure the thirty-one minor children initially identified via records supplied by PSSI and local middle and high schools. Such evidence supports the Court's November 10, 2022 order granting a temporary restraining order and, as the standard is the same for a preliminary injunction, establishes the elements needed for a preliminary injunction. PSSI has much to quibble about,[2] yet very little to say[3] – likely

---

[1] Defendant retained an expert in an attempt to contradict what Wage and Hour REC Amanda Christopoulos observed at the Worthington facility while trying to obtain electronic files: "When I approached [PSSI Safety Specialist Yarik Morales Vargas] on his computer to download files, I observed him dragging items with his mouse into the recycle bin before giving me access to sit down at the computer. I asked him why he was deleting files and advised him to stop moving items into the recycle bin, after which he replied he was just getting things organized for me on the computer." ECF Doc. No. 13-3 at ¶ 9. Ironically, however, the expert admits he "observed artifacts showing that an empty directory titled 'PPE' was briefly moved into the Recycle Bin and then back to its original location." ECF Doc. No. 39-10 at ¶ 23. His findings actually support the statement of REC Christopoulos that the PSSI employee moved an item into the recycle bin.

[2] Defendant spends the first half of its Opposition rewriting the facts presented in the Secretary's brief and adding in irrelevant or contradictory details. To be sure, the Secretary takes issue with much of the factual minutia but will not engage in a tit-for-tat denial of each item. However, he will address some of the more obvious incongruencies later in this Reply.

[3] PSSI argues, through a declaration of Paul DeCamp, an official at Wage and Hour over fifteen years ago, that PSSI "seems to be substantially in compliance with the FLSA, including its child labor provisions." ECF Doc. No. 39-9 at ¶ 20. PSSI's attempts to downplay the harms to at least fifty (50) minor children being employed in meat packing establishments to clean dangerous equipment in the middle of the night as "substantially" complying with the FLSA further supports the need for a preliminary injunction, as PSSI fails to appreciate hiring <u>any</u> minor child in oppressive child labor is against the law.

because the Secretary has met its burden to show the necessity of a preliminary injunction, as detailed below.

## ARGUMENT

**I.      The Secretary has Submitted Sufficient Evidence for Entry of a Permanent Injunction.**

In granting the temporary restraining order, this Court acknowledged the Secretary produced evidence sufficient to show: (1) Defendant's use of oppressive child labor causes irreparable harm to minors; (2) the balance of any possible hardships tips in the Secretary's favor, as he is asking only that Defendant follow the law; (3) he is likely to succeed on the merits to show Defendant unlawfully employs oppressive child labor; and (4) the public's interest in protecting minor children and ensuring efficient investigations and enforcement of the FLSA would be served by the entry of a temporary restraining order.  See ECF Doc. No. 8.  This Court also acknowledged that the standard for the entry of a preliminary injunction is the same as a temporary restraining order, and therefore, "the Secretary need not necessarily adduce additional evidence to meet his burden." ECF Doc. No. 13 at p. 1.

Defendants, however, attack the evidence put forth by the Secretary, claiming he supplied no "competent, admissible proof", "not one iota of proof", and not a "lick of underlying evidentiary proof" – apparently disregarding the eleven sworn statements of Wage and Hour Investigators.[4]  While Defendants claim such evidence is hearsay, to the extent the Investigators

---

Further, in Exhibit 10 to PSSI's Opposition, Defendant's purported expert states: "In my opinion, in deciding to continue to enforce or terminate the TRO, and whether to issue a PI, among the factors that the Court should consider are . . ."  Regardless, this opinion is a legal one, reserved for this Court to make. Dow Corning v. Safety Nat'l Casualty Corp., 335 F.3d 742, 751-52 (8th Cir. 2003) (trial court's decision not to consider legal opinions that "attempt to tell the court what result to reach" not an abuse of the court's substantial discretion under Rule 702 of the Federal Rules of Evidence); Farmland Indus. v. Frazier-Parrott Commodities, Inc., 871 F.2d 1402 (8th Cir. 1989) (legal conclusion were properly excluded, as admission would "give the appearance that the court was shifting to witnesses the responsibility to decide the case.").

[4]Although Defendant disregards the declarations submitted by the Secretary, it provided several of its own declarations from six front-line supervisors/managers in an attempt to support various assertions made in its

recount statements made by current PSSI employees, these statements are excluded from hearsay by Federal Rule of Evidence 801(d)(2)(D) as a statement made by an employee in the scope of their employment. See DCS Sanitation Mgmt, Inc. v. OSHRC, 82 F.3d 812, 815-16 (8th Cir. 1996) (admitting oral statements made to compliance officer as non-hearsay). Moreover, even if such statements were hearsay, the Court is permitted to consider such evidence at the preliminary injunction stage. See Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981) ("[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."); Asseo v. Pan American Grain Co., Inc., 805 F.2d 23, 26 (1st Cir. 1986) ("Affidavits and other hearsay materials are often received in preliminary injunction proceedings. The dispositive question is not their classification as hearsay but whether, weighing all the attendant factors, including the need for expedition, this type of evidence was appropriate given the character and objectives of the injunctive proceeding."); Acosta v. Austin Electric Services LLC, 322 F. Supp. 3d 951, 961 (D. Ariz. 2018) ("Plaintiff submitted two declarations from Wage and Hour Investigators who spoke with employees regarding their interviews. Defendants argued the Court could not consider the employees' statements in these declarations because they were hearsay. Defendants are incorrect. The rules of evidence do not apply strictly to preliminary injunction proceedings, and thus this Court may consider the employees' statements for the purpose of deciding whether to issue a preliminary injunction.").

---

Opposition. See ECF Doc. Nos. 39-2, 39-3, 39-4, 39-6, 39-7, and 39-8. Yet, the veracity of low-level managers' conclusory declarations should be treated with a degree of skepticism by the Court. While Defendant may not have forced its low-level managers to sign these declarations, obtaining these sorts of statements can be inherently coercive. Indeed, PSSI has already suspended one manager, a fact these other front-line managers must know. See "'Secret, not a secret': Southwestern Minnesota meatpacking towns react to child labor allegations", Minneapolis Star Tribune, Nov. 27, 2022, https://www.startribune.com/secret-not-a-secret-southwestern-minnesota-meatpacking-towns-react-to-child-labor-allegations/600230495/ ("In an email, company vice president Gina Swenson said a Worthington plant manager had been suspended, pending a review, for facilitating fraudulent identification papers for job applicants."). See, e.g., Acosta v. Nuzon Corp., No. 16-00363-CJC, 2019 WL 1460622, at *3 (C.D. Ca. Feb. 19, 2019) ("Courts have found employers to take adverse action in violation of the FLSA when they solicit and extract declarations from their employees under coercive circumstances.").

### A. Irreparable harm existed at the time the Secretary sought relief and still exists.

As a threshold matter, Defendant chides the Secretary for waiting "*almost three months*" (emphasis in original) between the time the Department first received a referral from a law enforcement agency about possible child labor violations by PSSI at its operation in Grand Island to when it asked the Court to enter a temporary restraining order. Its suggestion that the eleven weeks (to the day) between the time Wage and Hour opened its investigation to the filing with the Court somehow negates irreparable harm is frankly ridiculous. The case cited for the proposition, Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc., 182 F.3d 598, 602 (8th Cir. 1999), did hold a delay in seeking injunctive relief belied a claim of irreparable injury – when the delay was *nine years*.

In the "*almost three months*" bemoaned by Defendant, the Secretary issued numerous subpoenas for school and law enforcement records, conducted interviews and surveillance at multiple PSSI locations across multiple states, executed seven warrants across four states,[5] and put together a court filing, hardly suggesting the Department was twiddling its thumbs. See, e.g., Safety-Kleen Systems, Inc. v. Hennkens, 301 F.3d 931, 936 (8th Cir. 2002) ("Here, it took Safety–Kleen *seven months* to learn of Hennkens's competitive activity, marshal its case for a preliminary injunction, and file this action prepared for an immediate preliminary injunction hearing. The district court did not abuse its discretion in concluding that Safety–Kleen did not unduly delay and made an adequate showing of irreparable injury.") (emphasis in original).

---

[5]Defendant's brief makes note of the warrants executed by Wage and Hour being "ex parte". Warrants are routinely granted on an ex parte basis. See National-Standard Co. v. Adamkus, 881 F.2d 352, 363 (7th Cir. 1989) (noting "ex parte proceedings are the normal means by which warrants are obtained in both criminal and administrative actions"); Bunker Hill Co. Lead & Zinc Smelter v. U.S. Environmental Protection Agency, 658 F.2d 1280, 1285 (9th Cir. 1981). Indeed, the evidence of PSSI's attempt to block the successful execution of the warrants justifies the Secretary's decision to obtain them.

Furthermore, Defendant's argument that no continuing injury exists because it terminated the minor children identified by the Secretary after the Court issued the temporary restraining order is not supported by Eighth Circuit precedent in child labor cases. "Even though there exists present compliance, an injunction should issue unless the court can be soundly convinced that there is no reasonable probability of a reoccurrence of the acts." Marshall v. Lane Processing, Inc., 606 F.2d 518, 519 (8th Cir. 1979). Indeed, even a "trial court's belief that the employer desires to comply with the Act in the future might not be sufficient reason to deny the injunction." Brennan v. Correa, 513 F.2d 161, 163 (8th Cir. 1975).[6] Given the widespread nature of the violations, as shown by the additional minor children the Department continues to identify, the Court should enter a preliminary injunction until a decision is issued following an evidentiary hearing on the merits of the Secretary's Complaint.

### B. Supposed damages to PSSI's reputation is not the type of "harm" to be considered by the Court.

With regard to balancing possible harms the parties will suffer if the Court enters a preliminary injunction, Defendant laments that it would "impose an impossible standard on PSSI, because the Secretary seeks perfection . . ." On the contrary, the Secretary seeks that PSSI employ no more minor children.[7] Asking Defendant to obey the law – and requiring Defendant to face

---

[6] See also Mitchell v. Pidcock, 299 F.2d 281, 286-87 (5th Cir. 1962) ("[W]hen the reason for the employer's not seeing is that his head is buried in the sand, assurances by the employer of future compliance do not justify denial of an injunction against future violations."); Martin v. Funtime, Inc., 963 F.2d 110, 114 (6th Cir. 1992) ("[C]urrent compliance alone, particularly when achieved by direct scrutiny of government, is not a sufficient ground for denying injunctive relief." (quoting Brock v. Big Bear Market No. 3, 825 F.2d 1381, 1383 (9th Cir. 1987)). While Defendant cites Funtime for the proposition that "dependability of [the employer's] promises for future compliance" is a factor in considering whether to grant an injunction, notably that was in discussing the standard for a *permanent* injunction. Id. at 114.

[7] Defendant complains the Secretary has not articulated how it might comply with the long-standing provisions against oppressive child labor in the FLSA. It is Defendant, not the Secretary, who bears the responsibility to vet its applicants appropriately. Other businesses employing a host of workers in complex working conditions manage not to employ and injure young teens. Perhaps PSSI need only look to the practices of its clients or competitors to modify its methods. Though, that may be unnecessary, as Defendant appears to have suddenly seen the light. After the issuance of the temporary restraining order, PSSI alleges it identified and terminated numerous workers who could not prove they were not minors, all on its own. Of note, the Department's regulations (29 C.F.R. § 570.5) provide

the consequences if it does not – is no more than the Department expects of all employers. The Eighth Circuit was clear in Marshall v. Lane Processing, Inc., that such an ask does not constitute harm to a company, nor does "damage its public image" or any "financial hardship" it may suffer as a result. 606 F.2d at 520.

With regard to public image, Defendant accuses the Secretary of engaging is a smear campaign against it by pursuing "headline grabbing, unsubstantiated, and misleading 'gotcha' claims", citing as especially "egregious" a photo placed in the Secretary's brief, which has been used by media outlets in their coverage of the case. In this photo, taken by a Wage and Hour Investigator during a tour of the Grand Island JBS plant, an employee is shown performing the type of cleaning regularly done by PSSI employees. The photo was in the section of the brief dedicated to describing the conditions under which PSSI employees worked and was captioned: "Photo showing attire of PSSI employee working in Ground Beef room of the Grand Island JBS plant (taken by WHI Lopez)". ECF Doc. No. 3 at p. 5. Nowhere is it implied the subject of the photo is a minor. Indeed, the Department would not knowingly place a photo of a minor child in a publicly filed court document. Yet, Defendant blames the Secretary for the media's use of this picture, assigning some nefarious motive where none exists.

### C. *Regardless of PSSI's self-proclaimed efforts to avoid hiring children, it did so, and the Secretary is likely to succeed in proving such violations.*

Defendant spends a good portion of its brief regaling the Court with all the actions it takes to prevent the hiring of minors.[8] Although the results suggest such efforts have not been completely successful, the Secretary does not need to show PSSI's intent. "To succeed on its

---

protection to employers who have "on file an unexpired certificate issued and held pursuant to regulations of the Secretary of Labor certifying that such person is above the oppressive child-labor age." Here, no evidence exists Defendant made any such efforts.

[8] While Defendant lauds itself for not previously being found in violation of child labor laws by Wage and Hour, "of course, [an injunction] can be utilized even without a showing of past wrongs." U.S. v. W.T. Grant Co., 345 U.S. 629, 633 (1953).

motion for a preliminary injunction, Plaintiff will only need to prove one act of unlawful child labor." ECF Doc. No. 20 at p.4. And to prove a violation of the FLSA's child labor provisions, the Secretary must only prove: (1) the minor employee's age; (2) that the minor performed work for an employer, other than a parent; and (3) that the work constituted "oppressive child labor". 29 U.S.C. §§ 203(l), 212(c). Moreover, the Eighth Circuit was clear in Lenroot v. Interstate Bakeries Corp., 146 F.2d 325, 328 (8th Cir. 1945) when it held "corporations must be held strictly accountable for [their] child labor violations".[9] Moreover, "the Act contains no suggestion that the mere declaration by corporate officers of a policy of obedience to the law, or the absence of a grant of authority by them to the hiring foremen to disobey it, leaves the court with no duty of enforcement." Id.

Defendant attempts to put conditions on the standard articulated in Lenroot by citing to Gulf King Shrimp Co. v. Wirtz, 407 F.2d 508 (5th Cir. 1969), but this case does not allow Defendant to escape its liability. In Gulf King, the Fifth Circuit excoriates the employer for not being able to spot the children working in its facility, noting supervisors worked in the same building as and had frequent contact with minors, and therefore, "[a]ssuming that Gulf King discharged its responsibilities under the Act by informing its supervisory personnel to be on the alert for child workers, their inability to detect minors in the heading shed begins to approach the miraculous." Id. at 513. The court continued:

> While we do not expect geiger counters or the like to determine the presence of child laborers, neither do we find that passive acceptance of their work is permissible. It is a ridicule of reality to believe under the circumstances of this case that no responsible agent of Gulf King entering the heading shed could be oblivious to the presence of child laborers within. ***These children were not imposters or surreptitious intruders. If anything, they were regular and seasonal invitees***

---

[9]This is not unique to the Eighth Circuit. See, e.g., Funtime, Inc., 963 F.2d at 114 ("[A]n employer's responsibility for child labor violations approaches strict liability, and an employer cannot avoid liability by arguing that its supervisory personnel were not aware of the violation, or by simply adopting a policy against employing children in violation of the Act.").

> ***beckoned by the foreknowledge that their presence would be tolerated, their labors accepted, and their ages ignored.*** So long as Gulf King indulged in conscious myopia and studied indifference, this illegal labor supply would have continued.

Id. at 514 (emphasis added).

Regardless of the pages of its brief spent detailing the steps taken to prevent the employment of minor children, the fact is that Defendant has not and cannot deny it employed minor children in its facilities, children who had frequent contact each shift with PSSI's front-line supervisors. New PSSI employees spend four weeks working along PSSI trainers. After training is complete, supervisors confirm twice daily that each employee has donned and doffed their personal protective equipment ("PPE"), specifically checking off about "twenty times per employee, per work day" that the PPE is in order. Also, twice per shift, supervisors track the exact number of "scrub pads, nozzles, flashlights, scrapers, buckets, picks, and brushes provided to and returned by each individual worker." Each shift, supervisors filling-out nightly floor logs write down the names of any worker who failed to show for their shift. ECF Doc. No. 3-5 at ¶ 61 (Lopez Dec.).

While in its statement to the media shortly after the Court entered its temporary restraining order, PSSI labeled these children as "rogue individuals" and sought to foist all blame upon them,[10] like the Fifth Circuit stated: "Such self-delusions of innocence only underscore the urgent need, both now and in the future, for injunctive process." Gulf King, 407 F.2d at 516.

---

[10] See, e.g., "Food sanitation company accused of employing at least 31 children on graveyard shifts in slaughterhouses", NBC News, Nov. 12, 2022, https://www.cnbc.com/2022/11/12/food-sanitation-company-accused-of-employing-at-least-31-children-on-graveyard-shifts-in-slaughterhouses.html (visited Dec. 4, 2022).

## II. Evidence Submitted by Defendant[11] Does Not Obviate the Need for a Permanent Injunction.

Even if child labor violations were not based on strict liability, the hiring practices and policies of which Defendant boasts are not actually as robust as suggested. During Wage and Hour's surveillance activities prior to the execution of the warrants,[12] the Office Coordinator at Grand Island storefront location[13] went so far as to indicate documentation for potential applicants was not something to worry about that, suggesting a potential applicant should, "Just start the application online and we can take it from there." She assured that applications could be completed by anyone and could be filled-out on another person's behalf, only cautioning: "Just make sure to tell us if they are receiving public assistance or any other government-issued benefits, such as workmen's compensation or unemployment." Alcantara Dec. ¶ 8, Ex. 2. A similar interaction occurred at the PSSI storefront in Sedalia, Missouri[14]: during surveillance activities, a PSSI employee explained that if the applicant did not speak English or know how to use a computer, the

---

[11]While the Secretary need not point out every picadillo of disagreement with the "new evidence" submitted by Defendant, in relevant part PSSI declares the Secretary took "binders upon binders" from the Grand Island JBS location, when the Receipt for Records removed shows Wage and Hour took and then returned four binders. Alcantara Dec. ¶ 17, Ex. 2. Similarly, Defendant makes a great to-do about Wage and Hour collecting managers' phones at Grand Island during the execution of the warrant. First, the warrant expressly provided that Wage and Hour could take such electronic devices for copying an imaging. Second, as previously detailed, Wage and Hour collected these phones after managers stated they used them to conduct PSSI business, but Wage and Hour never inspected or reviewed them, returning them that morning to PSSI. Alcantara Dec. ¶¶ 11-13, Ex. 2. Finally, Defendant harps on Wage and Hour's surveillance abilities in spotting potential minors entering the meat packing facilities in the "darkness of night" (ECF Doc. No. 38 at pp. 7-8), ignoring of course that the JBS Grand Island parking lot was well lit (Rebolledo Dec. at ¶ 12, Ex. 1), and that Wage and Hour's suspicion – that PSSI was employing minor children – was born out later as true.

[12]Wage and Hour's internal policies permit and encourage surveillance where it would otherwise be difficult to obtain information through other means, such as in trying to determine hours worked by employees or any child labor activity. See Alcantara Dec. ¶ 4, Ex. 2.

[13]This is the same PSSI employee who submitted a declaration stating she has "no knowledge of PSSI ever knowingly hiring or employing anyone under the age of 18 years old to work as a Food Safety Team Member." ECF Doc. No. 39-7 at ¶ 16.

[14]Defendant vaunts a lack of minors discovered at the Tyson facility in Sedalia during Wage and Hour's execution of a warrant there. Yet, during the tour of the facility, one manager directed employees in Spanish over the radio to "stay in the room with their people." Further, in a subsequent interview weeks after the warrant's execution, a PSSI employee told Wage and Hour that "young people" had worked for PSSI in a different area of the Tyson facility doing cleaning work, but about two weeks after "you guys were there, they are all gone." Montes Dec. ¶¶ 10-11, Ex. 3.

PSSI employee would "assist" with their online application. Should the applicant not have documentation, the PSSI employee stated she could "work something out" to help the applicant. Montes Dec. ¶¶ 6-7, Ex. 3.

Additionally, PSSI's on-line application may ask the applicant to answer the question, "[A]re you 18 years of age or older?", but an applicant's failure to do so does not preclude hire. In fact, six of the minor children identified by the Department in its initial Brief submitted applications in which they appeared to have skipped the question entirely:



Clearly, the red "Warning" on these six applications did nothing to prevent the hiring of minor children. Rebolledo Dec. ¶ 5, Ex. 1.

Moreover, Defendant's assertion that it can use a reliance on E-Verify as a shield against section 12 violations of the FLSA is misplaced. E-Verify "is an internet-based system that allows an employer to verify an employee's work-authorization status." Chicanos Por La Causa, Inc. v.

11

Napolitano, 558 F.3d 856, 862 (9th Cir. 2009).  An employer submits a request to the E-Verify system based on information the employee provides, similar to that used in the I-9 process.  This process requires employees to attest to their eligibility to work and to present one of the specified identity documents.  8 U.S.C. § 1324a(b)(1-2).  It then requires employers to examine the identity document the employee presents and attest that it appears to be genuine.  8 U.S.C. § 1324a(b)(6).  E-Verify is not designed to verify the age of employees, only whether they are authorized to work in the United States.  As evidenced in this case, Defendant's use of E-Verify did not prevent the employment of numerous minors at multiple facilities.  This is one of the many reasons that Wage and Hour policy prohibits the reliance on I-9 forms to verify a minor's age.  Alcantara Dec. ¶ 3, Ex. 2.

Finally, Wage and Hour's review of Defendant's allegedly sterling records system has revealed numerous errors relating to its records.  In one instance, a minor's work record show they worked at a facility from July 2021 through October 2022.  Yet, during that same time period, PSSI's records show the same name and employee identification number being utilized at three other facilities in two different states.  In another instance, a worker's name and employee identification number was reused at the same facility a year apart, although their facial scans clearly identify two separate individuals.  Additionally, an identified minor who stopped working under one name and employee identification number was found to have returned to the same facility a few months later and began working under a completely different name and employee identification number.  Rebolledo Dec. ¶¶ 9-11, Ex. 1.

**III.    Defendant's Attempt to Rehash Issues Already Decided by the Court Should be Ignored.**

Again, Defendant makes much ado about the Secretary's protection of the private information of minor children and their confidential statements to Wage and Hour Investigators.

12

However, this Court has already ruled that the Secretary's confidential informant privilege applies to this case, and the Court will not order production of information covered by this privilege. ECF Doc. No. 20 at p.4. The Court recognized the Secretary's privilege to withhold the names of people who have given statements, as well as the statements themselves. Asserting this privilege and following the Court's Orders on this matter is not using the privilege as a "sword and a shield" but merely protecting confidential informants as contemplated by the privilege and this Court. See Brennan v. Engineered Prod., Inc., 506 F.2d 299, 302 (8th Cir. 1974) ("[E]nforcement of the Act is highly dependent on the cooperation of, and statements given by, employees", and such "cooperation may not be forthcoming unless the government can assure confidentiality.").[15] Withheld information – such as minor children's names, birth dates, school records, and statements – is all information that falls squarely within the confidential informant privilege. Furthermore, the Court has ruled Defendant is not entitled to the discovery it has requested at this stage of the case and only required the production of documents that the Secretary will present or rely on at the preliminary injunction hearing. ECF Doc. No. 20 at pp 3-4.

Defendant also complains, once again, that Wage and Hour continues to investigate the company's oppressive employment of children through the tools at the agency's disposal, including administrative subpoenas, which provide federal agencies with the necessary means to fulfill their congressional enforcement mandates. Okla. Press Publ'g Co. v. Walling, 327 U.S. 186, 201-02 (1946). The Department of Labor and other federal enforcement agencies do not lose

---

[15] Defendant cites to a non-controlling district court case from outside of the Eighth Circuit to claim the Secretary cannot use the confidential informant privilege in this case. Walsh v. Medstaffers LLC, No. 1:21-cv-1730, 2021 WL 5505825, at *5 (M.D. Pa. Nov. 24, 2021). This case did not involve child labor violations of the FLSA nor is it controlling law, especially whereas here, this Court has already ruled on the issue through Defendant's discovery motion briefing. Further this argument is couched in Defendant's claim that the Secretary does not have sufficient evidence to support a temporary restraining order or preliminary injunction, an issue which this Court has also already ruled on. ECF Doc. No. 13 (noting "[t]he Secretary's motion was supported by an index of evidence" and the evidence is "sufficient to warrant a temporary restraining order . . . and since the standard for a preliminary injunction is the same, the Secretary need not necessarily adduce additional evidence to meet his burden.").

their investigatory powers because a court granted a temporary restraining order. Indeed, other courts have expressly denied similar motions to quash third-party administrative subpoenas after issuing initial relief through a preliminary injunction. See, e.g., FTC v. Noland, No. 20-00047-PHX, 2020 WL 7264593, at *2 (D. Ariz. Dec. 10, 2020) (denying a motion to quash the FTC's administrative subpoena to a third-party financial institution after granting the FTC's temporary restraining order and preliminary injunction). Courts issue temporary restraining orders while the Secretary's investigation is ongoing as a matter of course. See Acosta v. Sw. Fuel Mgmt., No. 16-4547 FMO, 2018 WL 2207997, at *5 n.8 (C.D. Cal. Feb. 20, 2018) (noting "defendants' argument presented during the hearing that the Secretary is beyond its investigation stage and is now a litigant before the court is unpersuasive" and "given the lack of any evidence of abuse or misconduct on the part of the Secretary, the court will not impose a limitation, even for a brief period, on the Secretary that would interfere with its statutory powers"); Harris v. Oak Grove Cinemas, No. 13-cv-00728-HU, 2013 WL 3456563, at *3 (D. Or. May 2, 2013) (granting a temporary restraining order and preventing defendant from interfering with the "any pending investigation by the Department of Labor" or "litigation arising from the investigation"); Perez v. J&L Metal Polishing, Inc., No. SACV15–1957 PSG, 2016 WL 7655766, at *7 (C.D. Ca. May 9, 2016) (granting temporary restraining order during an ongoing lawsuit and preventing defendant from "interfering or otherwise impeding the Secretary's investigation"). On a final note, Defendant could largely render this issue of the administrative subpoena to Asure moot by providing the Secretary with its current roster of employees to show which employees it terminated after the issuance of the Court's temporary restraining order. But it has refused.

## CONCLUSION

For the reasons stated in his Brief and above, the Secretary respectfully asks the Court to enter a preliminary injunction prohibiting PSSI from engaging in oppressive child labor.

SEEMA NANDA
Solicitor of Labor

CHRISTINE Z. HERI
Regional Solicitor

EVERT H. VAN WIJK
Associate Regional Solicitor

*/s/ Traci Martin*
AMBRIEL RENN-SCANLAN
TRACI MARTIN
LAURA O'REILLY
Trial Attorneys

U.S. Department of Labor
Office of the Solicitor
2300 Main, Suite 10100
Kansas City, MO 64108
(816) 285-7260
renn-scanlan.ambriel@dol.gov
martin.traci.e@dol.gov
oreilly.laura.m@dol.gov

*Attorneys for Plaintiff Martin J. Walsh*
*Secretary of Labor*

15

## CERTIFICATE OF COMPLIANCE UNDER RULE 7.1(d)(3)

In compliance with Nebraska Civil Rule 7.1(d)(3), I hereby certify that this brief complies with the Court's limits for reply briefs of not exceeding 6,500 words. This brief contains <u>5,586</u> words. I have determined this word count by relying on the word-count function in Microsoft Word, version 2209, and it was applied to include all text, including the caption, headings, footnotes, and quotations.

*/s/ Traci Martin*

## CERTIFICATE OF SERVICE

I certify that on December 5, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Randall Coffey
Fisher & Phillips LLP
4922 Pennsylvania Ave., Suite 910
Kansas City, MO 64112
rcoffey@fisherphillips.com

Patrick M. Dalin
Fisher & Phillips LLP
Two Logan Square
100 N. 18th Street, 12th Floor
Philadelphia, PA 19103
pdalin@fisherphillips.com

Gillian G. O'Hara
1650 Farnam Street, The Omaha Building
Omaha, NE 68102
Gillian.ohara@kutakrock.com

*Attorneys for Defendant*

*/s/ Traci Martin*
